COX v FLINT BOARD OF HOSPITAL MANAGERS (ON REMAND)

Docket No. 205025. Submitted June 12, 2000, at Detroit. Decided October 27, 2000, at 9:00 A.M. Leave to appeal sought.

Teresa Cox, as next friend of Brandon Cox, a minor, and Teresa Cox and Carey Cox, individually, brought an action in the Genesee Circuit Court against the Board of Hospital Managers for the City of Flint (hereafter defendant) and Edilberto Moreno, M.D., seeking damages for injuries allegedly sustained by Brandon Cox at the defendant's hospital, Hurley Medical Center, as a result of treatment Brandon received in the hospital's neonatal intensive care unit (NICU). The court, Earl E. Borradaile, J., entered a judgment in favor of the plaintiffs following a jury trial. The trial court thereafter granted the defendant's motion for a new trial, and the plaintiffs appealed. The Court of Appeals vacated the order granting a new trial and remanded for reconsideration in an unpublished order entered December 14, 1994 (Docket No. 179366). On remand, the trial court entered an order granting judgment notwithstanding the verdict (JNOV) of no cause of action in favor of the defendant and conditionally granting a new trial if the judgment is vacated or reversed. On appeal from that order, the Court of Appeals reversed the grant of JNOV in an unpublished opinion per curiam issued November 22, 1996 (Docket No. 184859). The Court of Appeals concluded that the defendant's issues were not properly raised because of the failure to file a cross appeal. The Court of Appeals also denied the defendant's motion for rehearing. Instead of seeking leave to appeal to the Supreme Court, the defendant filed a new claim of appeal in the Court of Appeals (Docket No. 200943). That appeal was dismissed in an unpublished order entered June 11, 1997, because of the defendant's failure to attach a trial court order establishing jurisdiction. The trial court, Geoffrey L. Neithercut, J., pursuant to the defendant's motion, then entered a judgment in conformance with the Court of Appeals opinion entered November 22, 1996 (Docket No. 184859). The defendant appealed from the trial court's order, and the plaintiffs cross appealed. The Court of Appeals reversed the trial court's order in an unpublished opinion per curiam (GRIFFIN, J., dissenting), issued April 6, 1999 (Docket No. 205025). The Supreme Court, in lieu of granting leave to appeal, vacated the April 6, 1999, opinion and remanded the matter

to the Court of Appeals for further proceedings to consider arguments raised by the defendant. 462 Mich 859 (2000).

On remand, the Court of Appeals *held*:

1. The defendant forfeited its argument regarding the qualifications of the plaintiffs' experts by failing to raise the issue in a timely manner. The trial court did not abuse its discretion in allowing the plaintiffs' experts to testify regarding a national standard of care applicable to the acts of the NICU that operates as a team in caring for premature babies.

2. The Standard Jury Instruction regarding standard of care was properly modified by the trial court to reflect the plaintiffs' theory of the case. The court did not abuse its discretion in instructing the jury. Error warranting reversal did not occur. The theories of the parties and the applicable law were adequately presented to the jury.

3. The comments of the plaintiffs' counsel during closing argument were proper commentary on the evidence.

4. The defendant's argument that the plaintiffs' counsel improperly referred to damages testimony that had been excluded is without merit.

5. Even if the Court of Appeals were to conclude that the defendant's issues on appeal provided grounds for relief, the Court of Appeals would sua sponte apply the unclean hands maxim to allow the trial judgment to stand. Defense counsel failed to provide plausible explanations for filing a new claim of appeal from the prior decision of the Court of Appeals in Docket No. 184859 and failing to seek leave to appeal to the Supreme Court from that prior Court of Appeals opinion.

Affirmed.

GRIFFIN, J., dissenting, stated that the trial court's judgment should be reversed and the matter should be remanded for a new trial on the basis that the nonstandard jury instruction given by the trial court conspicuously omitted the limitation of the duty of "ordinary" care that is the standard applicable to the defendant's employees. The error was critical to a fundamental and material issue and was unfairly prejudicial to the defendant. The court also erred in allowing the jury to find that the NICU, as opposed to individuals within the NICU, could commit professional negligence or malpractice. The defendant's objections to the testimony of the plaintiffs' experts were timely and not forfeited, and the majority's criticism of the procedural history of this appeal is inappropriate and unwarranted because the Supreme Court has already ruled that the defendant's substantial issues are properly before the Court of Appeals.

1. WITNESSES — EXPERT WITNESSES.

   A party must move to strike an expert witness within a reasonable time after learning the expert's identity and basic qualifications; the failure to timely do so results in the forfeiture of the issue.

2. WITNESSES — EXPERT WITNESSES.

   The qualifications of an expert witness rest in the discretion of the trial court, and an appellate court will interfere with the court's ruling only to correct an abuse of discretion.

3. JURY — JURY INSTRUCTIONS.

   Jury instructions are to be viewed as a whole rather than extracted piecemeal to establish error; the omission of an instruction is not error warranting reversal where the intructions as a whole cover the substance of the omitted instruction.

4. JURY — JURY INSTRUCTIONS — STANDARD JURY INSTRUCTIONS.

   A trial court's failure to give a verbatim rendition of the language of a Standard Jury Instruction is not grounds for reversal if, when the instructions are viewed in their entirety, the theories of the parties and the applicable law are adequately presented to the jury.

5. APPEAL — COURT OF APPEALS DECISIONS.

   The court rules do not provide for a lateral appeal as of right to the Court of Appeals from a Court of Appeals decision (MCR 7.203[A]).

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Robert J. Schwartz, Stanley S. Schwartz*, and *Norman D. Tucker*), and *Stephen N. Leuchtman,* for the plaintiffs.

*Portnoy, Pidgeon & Roth, P.C.* (by *Robert P. Roth* and *Marc S. Berlin*), for the Board of Hospital Managers for the City of Flint.

ON REMAND

Before: HOOD, P.J., and GRIFFIN and MARKEY, JJ.

HOOD, P.J. This case is on remand by order of the Supreme Court to consider defendant Board of Hospital Managers for the City of Flint's issues on appeal. 462 Mich 859 (2000). We affirm.

At the commencement of the jury trial, the board (hereafter defendant) objected to the qualifications of plaintiffs' expert, Dr. Houchang Modanlou. Specifically, Dr. Modanlou had been deposed five months earlier as well as two weeks before the trial. During both depositions, Dr. Modanlou had indicated that he was not familiar with the local standard of care for nurses. The trial court held that a national standard of care governed because plaintiffs' theory of the case was based on the cumulative acts of doctors, nurses, and residents who worked in defendant's neonatal intensive care unit (NICU). Later in the trial, Dr. Carolyn Crawford testified as an expert for plaintiffs regarding the standard of care. She also stated that she was not familiar with the local standard of care. However, both experts testified that national standards of care applied to the care and treatment rendered by all staff members who participated in the treatment of newborns as a team. Over defense counsel's objection the trial court allowed Dr. Crawford to testify regarding the national standard of care.

Brandon Cox was born by cesarean section on February 8, 1990, at twenty-six to twenty-seven weeks' gestation. An umbilical arterial catheter (UAC) was inserted into Brandon's umbilicus to aid his treatment. The UAC allowed NICU personnel to monitor Brandon and take blood in a convenient fashion. The UAC was inserted by a doctor or resident. Doctors at defendant's hospital secured the UAC by suturing it. Further security was provided by taping the UAC, an act that was done by nurses who received specialized training to work in the NICU. Babies with UACs were monitored for activity level. The UAC was inserted into an artery and, if dislodged, the baby would have blood flow from the area of the umbilicus. Nurses

could place babies in restraints to further ensure that the UAC would not be dislodged. While the medical records do not indicate Brandon's activity level, Brandon weighed a mere 907 grams or approximately two pounds and was given a sedative. There is no indication attending nurses found the need to place Brandon in restraints.

On February 9, 1990, Brandon did experience problems. Doctors attended to Brandon, and he stabilized. However, on that date, the UAC was moved out two centimeters. Nurse Edith Klupp performed this action at the request of a doctor. No one resutured the UAC, and Nurse Klupp testified that resuturing was not required, although this testimony contradicted the testimony of defendant's witness, Dr. Brian Nolan. A cranial ultrasound taken in the early afternoon of February 10, 1990, did not reveal any abnormality.

On February 10, 1990, at 4:00 P.M., Nurse Martha Plamondon attended to Brandon. She drew blood from the UAC and repositioned him. It was common practice to reposition premature babies. At 4:20 P.M., respiratory therapist Richard Scott notified Nurse Plamondon that there was blood on Brandon's abdomen. There is a dispute regarding what happened next. Nurse Plamondon testified that Dr. Roberto Villegas, a neonatalogist, was present. She allegedly called out to him about Brandon's condition, and he told her to give Brandon 20 cubic centimeters of Plasmanate. However, Dr. Villegas had no recollection of Brandon. Furthermore, he testified that he would not have ordered 20 cc of Plasmanate be administered at one time, but would have ordered 10 cc be administered at two separate times. While it was undisputed that orders for Plasmanate were to reflect which doctor requested the administration, the order for 20 cc

of Plasmanate was recorded in the chart, but there was no indication which doctor gave the order. Dr. Amy Sheerer, a resident, testified that she was paged to the NICU "stat" and arrived by approximately 4:42 P.M. There, she learned from Nurse Plamondon that Brandon suffered 40 cc of blood loss, or approximately half of his blood volume, secondary to UAC dislodgment. Dr. Sheerer was advised that 20 cc of Plasmanate had been administered. She recorded that entry, but could not be certain regarding the ordering doctor. Brandon was treated with more Plasmanate and blood. Red blood cells are necessary because they carry hemoglobin for oxygenation. Plasmanate acts to improve blood volume and is convenient until blood can be obtained from the blood bank. While Brandon recovered from this incident, it was later discovered that he suffered from cranial bleeding. Brandon was later diagnosed with a form of cerebral palsy that involves the stiffening of the lower extremities. Plaintiffs' experts testified that Brandon's condition was a result of the incident on February 10, 1990, while defendant's experts testified that Brandon's premature birth and instability on February 9, 1990, caused his condition. In any event, Brandon will never be able to live alone and will require various therapies and surgeries for his difficulties.

Plaintiffs' theory as alleged in their amended complaint was that the treatment rendered in the NICU caused Brandon's injuries.[1] Specifically, plaintiffs alleged that the placement of the UAC, by doctors, and

---

[1] Specifically, the amended complaint contained paragraphs 12, 13, and 17(o)-17(t), that alleged that the cumulative negligence of employees of defendant's NICU was responsible for the injuries of plaintiffs. We will not reprint those allegations here.

the subsequent monitoring, by nurses, resulted in the dislodgment; that following the dislodgment of the UAC, the treatment rendered was allegedly deficient; and that it took twenty minutes to administer help to Brandon, despite the fact that Dr. Villegas was allegedly present. Consequently, plaintiffs presented Dr. Eric Amberg to testify regarding damages. Dr. Amberg delineated the extensive therapy that Brandon would require. He also testified that Brandon could never live alone but would be required to live in a group home setting. Dr. Amberg estimated the cost of therapy and group housing. There was no objection to this damages testimony.

Plaintiff Teresa Cox, Brandon's mother, testified that she intended to care for Brandon. Later, Dr. Robert Ancell testified regarding Brandon's limited employment options and his lost earning capacity. Dr. Ancell estimated damages at $1 million to $1.5 million. Dr. Ancell was asked to testify regarding the costs of attendant care. Defense counsel objected on the grounds that Teresa intended to care for Brandon. The trial court sustained the objection. Plaintiffs' counsel attempted to elicit the number of years that Brandon could be expected to outlive Teresa, but defense counsel objected on the grounds that the tables were based on normal healthy individuals. The objection was sustained. Defense counsel did not request that the trial court strike the earlier testimony of Dr. Amberg.

Defendant's expert, Dr. Steven Donn opined that the cause of Brandon's injuries was not the incident on February 10, 1990. Curiously, despite the fact that defendant continued to assert that the only breach alleged by plaintiffs was the alleged breach by Nurse Plamondon, defense counsel questioned Dr. Donn

regarding an alleged breach of the standard of care by Scott, the respiratory therapist. Dr. Donn testified that he had reviewed the records and there was no breach of the standard of care by any individual. However, Dr. Donn testified that a national standard of care applied, although there may be individual variations. This testimony regarding the national standard of care was consistent with the testimony of plaintiffs' experts.

During closing argument, plaintiffs' counsel referred to the negligence of the NICU. Specifically, he noted the actions of Nurse Klupp in moving the UAC out two centimeters, Scott's failure to aid Nurse Plamondon either secure help or treat Brandon, Nurse Plamondon's failure to timely treat Brandon, Dr. Villegas' failure to come to Nurse Plamondon's aid if he was, in fact, present, and the twenty minutes in which Brandon did not receive treatment despite the discovery of the bleeding. Defense counsel did not object initially, but when individual allegations were later raised, he objected. The objection was sustained on the basis of the pleadings and proofs presented. Plaintiffs' counsel also referred to the testimony of Dr. Amberg. Defense counsel objected on the grounds that the testimony regarding attendant care costs had been excluded. However, the trial court judge stated that he could not recall that ruling and denied the objection. In any event, plaintiffs' counsel did not continue to discuss the damages testimony but proceeded to discuss the effect of Brandon's condition.

Defendant first argues that the trial court erred in failing to disqualify plaintiffs' experts because they were unfamiliar with the local standard of care. We disagree. As an initial matter, we note that objection to the qualifications of plaintiffs' experts was not

raised until the commencement of trial and during trial. A party must move to strike an expert within a reasonable time after learning the expert's identify and basic qualifications. *Greathouse v Rhodes*, 242 Mich App 221; 618 NW2d 106 (2000). The failure to timely do so results in forfeiture of the issue. *Id.* A party may not seek to sabotage another party by depleting the substance of the case without warning. *Id.*; See also *State Hwy Comm v Redmon*, 42 Mich App 642, 646; 202 NW2d 527 (1972) ("[C]ounsel cannot sit idly by and then for the first time interpose objections at trial."). In the present case, defendant was aware of the qualifications of Dr. Modanlou at least five months before trial. Despite this knowledge, defendant did not take issue with the qualifications until the time of trial. If the trial court had granted defendant's motion, plaintiffs would have been forced to implore the court for a costly adjournment to seek a new expert or proceed to trial without experts to testify regarding the standard of care, a futile endeavor. Accordingly, the issue was forfeited. *Greathouse, supra.*[2]

---

[2] The dissent contends that the "sole authority" for our conclusion is the *Greathouse* decision and that that decision is limited to examining qualifications as defined by statute. Our review of the *Greathouse* decision indicates that it was not intended to be limited to examining statutory qualifications. The decision noted that it was relying on numerous instances wherein issues were held to be forfeited because of a deficiency or delay. If such deficiency in delay were allowed, parties could essentially lie in wait and sabotage the case of a party at or just before trial. Also, the dissent ignores our citation of the *Redmon* decision. In that case, the plaintiff's expert suffered a heart attack in February 1970 and was rendered unable to testify. In March 1970, the plaintiff notified the defendant that there would be a substitute for the expert witness, with trial scheduled for May 11, 1970. At trial, after the jury was sworn and the first witness was examined, the defendant moved to exclude the substituted expert because his name was not listed on the plaintiff's pretrial summary statement. We noted that the defendant was aware of the first expert's disability for five months and knew of the substitution for fifty-

In any event, the qualifications of an expert rest in the discretion of the trial court, and we will interfere with the trial court's ruling only to correct an abuse of discretion. *Mulholland v DEC Int'l Corp*, 432 Mich 395, 402; 443 NW2d 340 (1989). The high standard of review in this area is warranted because a determination of the expert's qualifications in light of the proposed testimony involves complicated factual reviews, cross-examination of an expert is an ample safeguard, and the *issue of qualifications is considered too trifling to warrant appellate review. Id.* Review of the amended complaint in this litigation reveals that plaintiffs alleged a theory of a chain of negligent acts that resulted in Brandon's injuries. Furthermore, the discovery presented by plaintiffs supported the theory. That is, the medical records and depositions of defendant's personnel indicated that, after the UAC was inserted, it was pulled out two centimeters. Brandon was not placed in restraints. He was repositioned. Twenty minutes later, it was discovered that the UAC was dislodged. Despite the discovery, it took fifteen to twenty minutes to take mea-

---

six days. *Redmon, supra* at 644-645. Despite this knowledge, the defendant failed to act until the time of trial. This Court stated that the defendant did not appear to act in good faith by raising the objection at trial and failed to "raise timely objection" to the proposed new expert witness. *Id.* at 645. Therefore, the trial court's refusal to strike the substituted witness was affirmed on appeal. *Id.* at 646. Likewise, in the present case, defendant was aware of the qualifications of Dr. Modanlou five months before trial and his inability to testify regarding a local standard of care. Despite this knowledge, defendant did not act to exclude the testimony of Dr. Modanlou until the first day of trial. We cannot condone a course of conduct that leaves a party at the mercy of the trial court's discretion to allow adjournments when the means of challenging any deficiency were readily discernible and available for months before trial. In any event, we note that although we conclude that the challenge to the ability to testify regarding the standard of care was forfeited, we nonetheless address the merits of the issue.

sures to increase Brandon's blood pressure and blood volume. Defendant was placed on notice that the theory was premised on the acts of the NICU that operates as a team in caring for premature babies. This information was provided to defendant in the amended complaint and in the discovery depositions. Plaintiffs' experts testified that the team unit is governed by a national standard of care. This testimony was corroborated by defendant's expert, Dr. Donn. Defendant was provided with sufficient notice of the theory of liability before the trial and the theory was supported by the evidence. See *Dacon v Transue*, 441 Mich 315, 329-330; 490 NW2d 369 (1992). Accordingly, we cannot conclude that the trial court abused its discretion in allowing plaintiffs' experts to testify regarding a national standard of care. *Mulholland, supra.*

Even if we could conclude that the admission of this evidence was erroneous, reversal is not required unless there is prejudicial error. *Lenzo v Maren Engineering Corp*, 132 Mich App 362, 365; 347 NW2d 32 (1984). See also *Schutte v Celotex Corp*, 196 Mich App 135, 142; 492 NW2d 773 (1992) ("[T]he conduct of a trial is within the control of the presiding judge and does not result in error warranting reversal unless there is some proof of prejudice."). While defendant contends that the standard of care is governed by a local community standard, there is no evidence in the record to support that contention. While defendant may not have had the burden of proof to demonstrate the standard of care, defendant's failure to present proofs in a separate record that the standard of care is governed by a local standard precludes any conclusion that the trial court's ruling resulted in prejudicial error. Furthermore, defendant's expert, Dr. Donn, testified that a national standard applied. Accordingly,

even if we could conclude that the evidentiary ruling was an abuse of discretion, there is no foundation in the record to conclude that the ruling led to prejudicial error. *Lenzo, supra.*[3]

Defendant next argues that the trial court committed error requiring reversal in identifying the wrong alleged tortfeasor and the wrong standard of care in the Standard Jury Instruction, SJI2d 30.01, read to the jury. We disagree. We review jury instructions in their entirety. *Stoddard v Manufacturers Nat'l Bank of Grand Rapids*, 234 Mich App 140, 163; 593 NW2d 630 (1999). It is error to instruct a jury about an issue unsustained by the evidence or the pleadings. *Murdock v Higgins*, 454 Mich 46, 60; 559 NW2d 639 (1997). "However, there is no error requiring reversal if, on balance, the theories of the parties and the applicable law were adequately and fairly presented to the jury." *Id.* The determination whether an instruction is accurate and applicable to a case rests within the sound discretion of the trial court. *Stevens v Veenstra*, 226 Mich App 441, 443; 573 NW2d 341 (1997). Review of the instruction given in this case reveals that the trial court took the Standard Jury Instruction and inserted a reference to the neonatal intensive care unit to reflect the theory of plaintiffs that was supported by the evidence. Defendant's continued assertion, that plaintiffs' theory of the case

---

[3] While the dissent contends that there is no requirement that defendant present an offer of proof regarding the local standard of care, without any offer of proof to demonstrate that the national standard of care differs from any local standard, we would be ordering a new trial not on the basis of prejudicial error, but, rather, on the basis of speculation that the standard differs. This course of action, to order a new trial without examining the standard, is particularly suspect in light of the fact that *defendant's expert* testified that a national standard of care applied, in concurrence with the opinions of plaintiffs' experts.

was premised solely on the negligence of Nurse
Plamondon, is completely unsupported by the record.
Dr. Crawford testified that she took issue with the
placement of the UAC, its subsequent movement, the
failure to resuture it after the movement, the monitor-
ing of the line, and the response to the bleeding once
it was discovered that the UAC had been displaced.
The instruction was properly modified to reflect
plaintiffs' theory of the case, that is, a chain of events
in the placement and monitoring of the UAC and the
subsequent response to the displacement of the UAC
resulted in the injuries to the child. The trial court did
not abuse its discretion in modifying the instruction
to reflect plaintiffs' theory of the case. *Stevens,
supra.* Furthermore, defendant contends that only the
liability of Nurse Plamondon was at issue and that the
standard of care governing her conduct was local.
Again, as already noted, plaintiffs' theory was pre-
mised on a chain of liability of individuals who
worked in the NICU and *experts for both plaintiffs and
defendant were in agreement that a national stan-
dard of care applied.* Accordingly, we cannot con-
clude that the trial court abused its discretion in
instructing the jury. *Id.*

We note that the dissent takes issue with the
instruction as given on grounds other than those
raised by defendant. Specifically, the dissent alleges
that the trial court's failure to instruct in accordance
with the strict language contained within the Stan-
dard Jury Instruction requires reversal. We disagree
with the dissent. The trial court modified the Stan-
dard Jury Instruction to comport with plaintiffs' the-
ory of the case. That is, the trial court did not name
an individual profession, but, rather, utilized the term

"neonatal intensive care unit."[4] However, in the course of modifying the instruction, the trial court omitted the phrase "ordinary learning, judgment or skill" from the first paragraph of the instruction. However, the phrase is also repeated in the second paragraph of the Standard Jury Instruction. The trial court included the *majority* of this phrase in reading the second paragraph of the instruction to the jury, but omitted the word "ordinary" from the phrase.

While the trial court did omit the terms "learning, judgment or skill" from the first paragraph of the instruction, that language was included in the second paragraph read to the jury. Jury instructions are to be viewed as a whole rather than extracted piecemeal to establish error. *Lansing v Hartsuff*, 213 Mich App 338, 348; 539 NW2d 781 (1995); *Larzelere v Farmington Twp*, 63 Mich App 465, 468; 234 NW2d 568 (1975). The omission of an instruction is not error warranting reversal if the instructions as a whole cover the substance of the omitted instruction. *Hartstuff, supra*. Review of the instructions as a whole reveals that the substance of any omission from the first paragraph was presented in the second paragraph. Error warranting reversal did not occur. *Id.*;

---

[4] Irrespective of the fact that the term "unit" was presented to the jury, this does not mean that a building or wing of the hospital was held accountable as opposed to individuals. Review of the proofs and numerous arguments before the trial court regarding this issue reveals that the evidence presented to the jury was that the "unit" referred to the individuals, including nurses, neonatalogists, residents, and respiratory therapists, who worked together "as a unit" in the care and treatment of newborns. We note that defendant merely wanted the instruction to address the negligence of Nurse Plamondon only. The term "unit" could have easily been modified to list the neonatalogists, nurses, residents, and respiratory therapists that comprised the unit and treated Brandon. However, defendant did not make such a request and would only have been satisfied if the instruction was limited to allege liability of Nurse Plamondon only, in spite of plaintiffs' theory to the contrary.

*Murdock, supra.*[5] The dissent contends that the omission of the word "ordinary" requires reversal. We disagree. In *Cody v Marcel Electric Co*, 71 Mich App 714, 720-721; 248 NW2d 663 (1976), the plaintiff alleged that the omission of the word "necessarily" from the instruction regarding the plaintiff's theory of negligent design required reversal. We held that omission of the word did not render the instruction erroneous and also that its inclusion would have made the instruction misleading. *Id.* Additionally, in *Van Every v Southeastern Michigan Transportation Authority*, 142 Mich App 256, 259-260; 369 NW2d 875 (1985), the plaintiff alleged that the trial court's omission of the word "disability" from the instruction and the failure to correct the omission after objection constituted error requiring reversal. This Court held that where it was perfectly clear that no prejudice could have resulted from the slight omission from the standard instruction, reversal was not required. *Id.* at 261. Generally, expert testimony is required to establish the standard of care and to demonstrate the defendant's alleged failure to conform to that standard. *Birmingham v Vance*, 204 Mich App 418, 421; 516 NW2d 95 (1994). In the present case, plaintiffs presented the testimony of Dr. Crawford to establish that the acts of unit members working in the NICU were not in accor-

---

[5] Defendant relies on *Danner v Holy Cross Hosp*, 189 Mich App 397, 398; 474 NW2d 124 (1991), for the proposition that the jury could not be instructed regarding the negligence of the unit. Review of that decision reveals that it does not support defendant's position. Rather, the plaintiff in *Danner* alleged in the circuit court a claim of negligence against the defendant hospital in order to avoid application of arbitration. Despite the plaintiff's artful pleading in characterizing the claim as one of corporate negligence, we held that the claim, in fact, alleged a claim of medical malpractice that was governed by arbitration. The decision did not abolish vicarious liability for members of a team in a neonatal intensive care unit that allegedly act negligently in rendering care to a premature newborn.

dance with the standard of care. However, defendant did not take issue with that conclusion and did not argue that Nurse Plamondon's actions comported with the actions expected of an individual nurse with "ordinary learning, judgment or skill."[6] Defendant's experts challenged causation. Specifically, defendant's experts alleged that the brain injuries suffered by Brandon were not the result of the bleeding incident following the displacement of the UAC on February 10, 1990, but were the result of his premature birth and complications that arose on February 9, 1990. Accordingly, we cannot conclude that the omission of the word "ordinary" from the modified instruction resulted in prejudice to defendant when it did not take issue with this instruction on this basis below or on appeal and did not challenge the "learning, judgment or skill" of NICU employees, ordinary or otherwise, but, rather, challenged any liability on the basis of causation. *Van Every, supra; Cody, supra.*

Furthermore, review of the history of the evolution of the Standard Jury Instructions (SJI) reveals that deviations from the standard language no longer mandate reversal. Shortly after the SJI were originally mandated by GCR 1963, 516.6(2), our Supreme Court ruled that where accurate SJI were properly requested at trial, but not given, and the omission or deviation was brought to the attention of the trial court before

---

[6] Curiously, we note that while defendant continually argued that plaintiffs' theory of the case was premised on the liability of Nurse Plamondon solely, it did not present proofs to match that allegation. That is, it did not present a nurse to testify regarding the local standard of care in an attempt to justify Nurse Plamondon's actions. Instead, the defense of the action consisted of testimony of neonatalogists who did not comment on the propriety of Nurse Plamondon's actions and any fifteen- to twenty-minute delay in rendering treatment, but emphasized their opinions regarding causation.

jury deliberations, prejudicial error would be pre-
sumed. *Javis v Ypsilanti Bd of Ed,* 393 Mich 689, 702-
703; 227 NW2d 543 (1975). In such cases, reversal was
mandated. This "automatic reversal" rule was reaf-
firmed four years later in *Socha v Passino,* 405 Mich
458; 275 NW2d 243 (1979). There, the Court stated:

> We have reconsidered the *Javis* rule in the factual con-
> text of this case. We reaffirm what we said in *Javis:*
>
> "The SJI were compiled in an effort to uniformly present
> juries in civil cases with clear, concise and unbiased
> instructions to guide their deliberations. Secondarily, the SJI
> were also designed to conserve the energies of trial counsel
> and the trial courts by eliminating the need to draft and
> select proposed instructions on commonly encountered
> subjects for jury resolution. These enumerated benefits of
> the SJI are present, of course, only if the SJI are regularly
> employed by the trial courts."
>
> We have reevaluated the arguments for and against the
> strict rule announced in *Javis* and reassert:
>
> "Whatever wasted effort that will result from the reversal
> of those few cases wherein a trial court erroneously devi-
> ates from the SJI will be overcome by the benefits of con-
> served trial court time at the instruction stage, certainty to
> trial counsel as to how the law will be stated to the jury,
> and a clear and concise instruction for the jury to work
> with." [*Id.* at 467-468 (citations omitted).]

By 1985, however, the Court concluded that the
goals of *Javis* had been achieved and that continua-
tion of the "automatic reversal" rule was no longer
warranted. In *Johnson v Corbet,* 423 Mich 304, 324;
377 NW2d 713 (1985), the Court opined that trial
courts have become accustomed to using the SJI and
that the " 'strict standard for SJI error' announced in
*Javis*" was no longer needed in order to assure com-
pliance with the court rule or to achieve the policy
goals that moved the *Javis* Court to adopt the rule of

that case. The Court concluded that, from that point forward, review of claimed error for violations of MCR 2.516 must be tested according to the harmless error standard of MCR 2.613:

> While the appellate court should not hesitate to reverse for a violation of Rule 2.516, it should not do so unless it concludes that noncompliance with the rule resulted in such unfair prejudice to the complaining party that the failure to vacate the jury verdict would be "inconsistent with substantial justice." [*Johnson, supra* at 327.]

The Court's rationale in *Johnson* is particularly applicable in this case, as has been pointed out earlier herein. We reemphasize here what is clearly now the rule. A failure to give a verbatim rendition of the language of a Standard Jury Instruction is not grounds for reversal if, when the instructions are viewed in their entirety, the theories of the parties and the applicable law are adequately presented to the jury. We find that to be the case here.

Defendant next argues that comments made by plaintiffs' counsel during closing arguments regarding the claimed negligence of Nurse Klupp and Dr. Villegas and violations of policy and procedure were improper because there was no evidence to support such claims. We disagree. " 'When reviewing asserted improper comments by an attorney, we first determine whether the attorney's action was error and, if it was, whether the error requires reversal.' " *Kubisz v Cadillac Gage Textron, Inc*, 236 Mich App 629, 638; 601 NW2d 160 (1999) (citation omitted). Unless the attorney's comments indicate a deliberate course of conduct designed to prevent a fair and impartial trial, there is no cause for reversal. *Id.* Reversal is required where prejudicial statements are made that reflect a

studied attempt to inflame the jury or deflect the
jury's attention from the issues involved. *Id.* Review
of plaintiffs' closing argument reveals that the com-
ments were proper commentary on the evidence.
Nurse Klupp admitted moving the UAC two centime-
ters. There was no additional action taken to secure
the UAC after that movement. Brandon was not placed
in restraints. Brandon was later repositioned, and the
UAC was found dislodged. Dr. Villegas either was not
present on the scene or was negligent in rendering
treatment by failing to come to the aid of Nurse
Plamondon, causing a fifteen- to twenty-minute delay
in treating Brandon. Furthermore, any commentary
on defendant's policies and procedures was not used
for the purpose of demonstrating a breach of the
standard of care. Rather, it was merely noted that
while Dr. Donn testified that suturing the UAC was
unnecessary, Dr. Donn taught the procedure to new
residents and it was defendant's policy to suture the
UAC in place. Accordingly, the making of the com-
ments did not result in error. Furthermore, there is no
indication that the comments were designed to
prejudice or deflect the jury's attention from the
issues. *Kubisz, supra.*

Lastly, defendant argues that plaintiffs' counsel
improperly referred to damages testimony that had
been excluded. We disagree. Review of the record
reveals that Dr. Ancell's testimony regarding attendant
care costs was excluded on the basis of the preceding
testimony given by Brandon's mother, Teresa. How-
ever, Dr. Amberg testified regarding the therapies
needed and the costs of living in a group home set-
ting. Defendant did not move to exclude this testi-
mony at any time. Accordingly, defendant's argument
is without merit. Furthermore, there is no indication

in the record that defendant requested that any verdict be divided to indicate the type of damages awarded. Accordingly, any contention that this commentary had any bearing on the verdict, even if improper, is speculative. Finally, we note that defendant never challenged the amount of damages attested to by plaintiffs' experts. Rather, defendant's theory was that the injuries were due to the premature birth and complications arising from the prematurity and did not take issue with any damages award.

Finally, we would be remiss in failing to address the circumstances that led to this third claim of appeal from the same jury verdict. In *Cox v Flint Bd of Hosp Managers*, unpublished opinion per curiam, issued November 22, 1996 (Docket No. 184859), a panel of this Court concluded that defendant's issues were not properly raised because of the failure to file a cross appeal. Defendant filed a motion for rehearing from that decision, but rehearing was denied in an order entered January 14, 1997. At that time, defendant had received the November 22, 1996, opinion from this Court regarding the procedural defect and had the right to file with the Supreme Court an application for leave to appeal the decision. Defendant did not do so. Instead, defendant filed a new claim of appeal in the Court of Appeals, assigned Docket No. 200943, but defendant did not attach a trial court order to establish jurisdiction. After being notified of the defective filing by a letter that requested a copy of the circuit court order, defendant submitted a copy of the Court of Appeals order denying rehearing in Docket No. 184859. The appeal in Docket No. 200943 was dismissed in an unpublished order of the Court of Appeals, entered June 11, 1997, because of defendant's failure to cure the deficiency. Defendant failed

to identify any provision in the court rules that pro-
vides for a lateral appeal to the Court of Appeals
from a Court of Appeals decision. MCR 7.203(A) sets
forth the jurisdiction for a claim of appeal of right
and does not provide for an appeal to this Court from
a Court of Appeals decision.

At that time, defendant did not seek to file a
delayed application for leave to appeal with the
Supreme Court. Instead, defendant filed a motion in
the circuit court. There, defense counsel represented
that the Court of Appeals had rendered a decision
and had requested that the trial court sign an order
incorporating the judgment of the Court of Appeals in
order for the defendant to file a claim of appeal.
Defense counsel asserted that this representation
regarding the procedure to be followed had been
made by Court of Appeals staff.[7] The trial court indi-
cated that it was disturbed by the fact that the Court
of Appeals issued an order but "they [sic] don't
bother to draft one and implement it and they [sic]
want the circuit court to order what they [sic] say?"
Defense counsel stated that he was "similarly puz-
zled" and that this Court gave no direction in its
unpublished opinion. Plaintiffs' counsel advised the
trial court that defendant's issues were not raised on
cross appeal and were not addressed on appeal, and
therefore, defendant needed a new trial court order to
enable it to file a new claim of appeal. Despite the
statement of plaintiffs' counsel, the trial court signed
the order because it did not want to deprive either

---

[7] Our staff is precluded from giving legal advice. Even if a member of
the staff did advise defense counsel to take this course of action, defense
counsel fails to cite any authority for the proposition that oral advice may
supersede or circumvent the appellate rules governing jurisdiction.

side of an opportunity to pursue a remedy on appeal and noted that the judgment for plaintiffs would accrue interest during the pendency of the appeal. The trial court's ruling on the motion occurred more than three years after the trial.

We cannot allow parties who disagree with a decision of the Court of Appeals to seek redress by returning to the trial court for entry of a new order for a second claim of appeal as of right. A decision rendered by this Court would never be final if such conduct were permitted. In that instance, a party would have the opportunity to ask a subsequent panel of this Court to provide relief that the first panel did not grant.[8] Accordingly, even if we were to conclude that defendant's issues on appeal provided grounds for relief, we would sua sponte apply the unclean hands maxim to allow the trial judgment to stand. *Stachnik v Winkel*, 394 Mich 375, 382-383; 230 NW2d 529 (1975). Defense counsel stated to the trial court that it had "several options" when he sought to have a new trial court order entered that incorporated the judgment of the Court of Appeals. Defense counsel has failed to provide a plausible explanation for filing a new claim of appeal from the prior opinion of the Court of Appeals and failed to explain why he did not seek leave to appeal to the Supreme Court. The lack of an explanation for the conduct and the failure to substantiate the conduct with citation of the court rules could indicate that defendant was attempting to lengthen the time frame for resolution of any decision in an attempt to force plaintiffs to settle the litigation.

---

[8] To preclude "judge shopping" in the circuit court, MCR 8.111(D) requires that parties inform the court whether another action governing the same transaction or occurrence was filed or is pending.

It has been six years since the judgment was rendered by a jury. If defendant had filed an application for leave to appeal following this Court's decision in 1997, the appellate process would be exhausted by now. We caution members of the bar that seeking a new trial court order to avoid the effect of a Court of Appeals decision in lieu of seeking an application for leave to appeal to the Supreme Court will not benefit the litigant that comes before this Court with such unclean hands. *Stachnik, supra.*

Affirmed.

MARKEY, J., concurred.

GRIFFIN, J. (*dissenting*). This case returns to us on remand from the Supreme Court, which, in lieu of granting leave to appeal, vacated our previous unpublished opinion per curiam in this matter and remanded for a ruling on the issues "which defendant has properly and persistently raised." *Cox v Flint Bd of Hosp Managers*, 462 Mich 859, 860 (2000). I would reverse and remand for a new trial.

In the trial court and on appeal, the Board of Hospital Managers for the City of Flint (hereafter defendant) raised two issues of error that require reversal. First, over defendant's objection,[1] the trial court gave the jury an instruction regarding professional negli-

---

[1] *Mr. Roth [defense counsel]:* . . . I would of course preserve my objection in that regard, your Honor, and would request, as I've submitted in my proposed instructions, that it state with regard to a neonatal nurse practitioner of ordinary learning or judgment or skill in this community or similar one. And obviously, based upon my earlier positions as stated on the record, that I believe under *Bahr [v Harper-Grace Hosps*, 448 Mich 135; 528 NW2d 170 (1995)] and under the statute a local standard is applicable to nurses in this state.

gence/malpractice that substantially departed from
SJI2d 30.01. Specifically, the trial court intentionally
deleted the crucial phrase "of ordinary learning, judg-
ment or skill" that limits the duty owed by defendant.
The nonstandard jury instruction given by the trial
court in effect imposed strict liability for any wrong
committed by defendant's employees irrespective of
the standard of care. The following nonstandard
instruction was given to the jury with regard to pro-
fessional negligence or malpractice and defendant's
duties:

> When I use the words professional negligence or mal-
> practice with respect to the Defendant's conduct, I mean
> the failure to do something which a hospital neonatal inten-
> sive care unit would do or the doing of something which a
> hospital neonatal intensive care unit would not do under
> the same or similar circumstances you find to exist in this
> case.
>
> It is for you to decide, based upon the evidence, what the
> hospital neonatal intensive care unit with the learning, judg-
> ment or skill of its people would do or would not do under
> the same or similar circumstances.

The Standard Jury Instruction, SJI2d 30.01, provides:

> When I use the words "professional negligence" or "mal-
> practice" with respect to the defendant's conduct, I mean
> the failure to do something which a _____(name
> profession) of ordinary learning, judgment or skill in [this
> community or a similar one / _____ (name particular
> specialty)] would do, or the doing of something which a
> _____ (name profession) of ordinary learning, judgment or
> skill would not do, under the same or similar circumstances
> you find to exist in this case.
>
> It is for you to decide, based upon the evidence, what the
> ordinary _____ (name profession) of ordinary learning,

judgment or skill would do or would not do under the same
or similar circumstances. [Emphasis added.]

The majority acknowledges the deviation from the
Standard Jury Instruction, noting that the trial court
omitted the terms "ordinary learning, judgment or
skill" from the first paragraph of the instruction that
defined defendant's duty. Furthermore, the second
paragraph of the nonstandard jury instruction given
by the trial court did *not* include the word "ordinary."
The purpose of the "ordinary learning, judgment or
skill" standard of duty is explained in Dobbs, Law of
Torts, § 242, pp 631-633:

> *The professional-peer standard.* . . . In the absence of
> some specific undertaking, the patient normally under-
> stands and expects that physicians acting within the ambit
> of their professional work will exercise the skill, knowl-
> edge, and care *normally* possessed and exercised by other
> members of their profession of the same school of practice
> in the relevant medical community. Similarly, the physician
> implicitly undertakes to meet at least such a standard.
>
> *    *    *
>
> . . . [T]he professional standard asks the trier [of fact]
> only to determine whether the defendant's conduct con-
> formed to the medical standard or medical custom in the
> relevant community. Thus under the traditional rule, as long
> as a doctor follows the medical standard or custom, he is
> not negligent, regardless of how risky the custom or how
> unnecessary. [Emphasis added.]

The deletion of the limitation of duty of "ordinary"
care in the nonstandard instruction is inconsistent
with Michigan law as set forth in SJI2d 30.01 and
numerous cases such as *Johnson v Borland*, 317 Mich
225, 231; 26 NW2d 755 (1947), wherein the Supreme
Court reiterated:

" 'The law is well settled that a patient who is treated by a physician is entitled to a thorough and careful examination, such as the condition of the patient and the attending circumstances will permit, with such diligence and methods of diagnosis for discovering the nature of the ailment as are usually approved and practiced by medical men *of ordinary or average learning, judgment, and skill in that community or similar localities.*' " [Quoting with approval *Fortner v Koch*, 272 Mich 273; 261 NW 762 (1935), quoting from *Ramberg v Morgan*, 209 Iowa 474; 218 NW 492 (1928) (emphasis added).]

In the context of legal malpractice, the Supreme Court in *Simko v Blake*, 448 Mich 648, 656; 532 NW2d 842 (1995), explained that the ordinary care standard is an important limitation on a defendant's duty:

[A]ccording to SJI2d 30.01, all attorneys have a duty to behave as would an attorney "of *ordinary* learning, judgment or skill . . . under the same or similar circumstances . . . ."

. . . [A]n attorney does not have a duty to insure or guarantee the most favorable outcome possible. An attorney is never bound to exercise extraordinary diligence, or act beyond the knowledge, skill, and ability *ordinarily* possessed by members of the legal profession. [Emphasis added.]

See also *Cleveland v Rizzo*, 99 Mich App 682, 686; 298 NW2d 617 (1980) ("[A] medical practitioner warrants that he possesses the professional skill *ordinarily* possessed by medical practitioners . . . ."). (Emphasis added.)

In the present case, the nonstandard jury instruction given by the trial court conspicuously omitted in both paragraphs the limitation of the duty of "ordinary" care that is the standard applicable to defendant's employees. The instructional error was critical

to a fundamental and material issue in this case. *Kirby v Larson*, 400 Mich 585, 607; 256 NW2d 400 (1977) (opinion by WILLIAMS, J.); *Getman v Mathews*, 125 Mich App 245; 335 NW2d 671 (1983). Here, the trial court's violation of MCR 2.516(D)(2)[2] was unfairly prejudicial to defendant to such an extent that to allow the judgment to stand would be " 'inconsistent with substantial justice.' " *Johnson v Corbet*, 423 Mich 304, 326; 377 NW2d 713 (1985); *Pontiac School Dist v Miller, Canfield, Paddock & Stone*, 221 Mich App 602, 622; 563 NW2d 693 (1977); *Duke v American Olean Tile Co*, 155 Mich App 555, 565; 400 NW2d 677 (1986).

While the instructional error alone compels reversal, in the interest of completeness I will address defendant's other issues. Defendant argues that the trial court committed error requiring reversal in allowing, over defendant's objection, the jury to find that the "neonatal intensive care *unit*" could commit professional negligence/malpractice as opposed to individuals within defendant's neonatal intensive care unit. I agree. As we stated in *Danner v Holy Cross Hosp*, 189 Mich App 397, 398-399; 474 NW2d 124 (1991): "Despite plaintiff's attempt to characterize his claim as one of corporate negligence, his claim is, in fact, one for medical malpractice. . . . *The only way a hospital can render treatment is through its nurses*

---

[2] MCR 2.516(D)(2) states:

    Pertinent portions of the Michigan Standard Jury Instructions (SJI) must be given in each action in which jury instructions are given if
    (a) they are applicable,
    (b) they accurately state the applicable law, and
    (c) they are requested by a party.

*and physicians.*" (Emphasis added.) Defendant corporation acts through the conduct, errors, and omissions of its agents and employees. Defendant's liability, if any, arises out of its respondeat superior liability for its employees and agents. Plaintiffs' attempt to depersonalize the alleged malpractice is without authority and contrary to the established law of malpractice. Furthermore, the error of permitting the jury to find the "unit" liable for malpractice was compounded by the trial court's refusal to apply a local standard of care to defendant's nurses. See MCL 600.2912a; MSA 27A.2912(1), *Bahr v Harper-Grace Hosps*, 448 Mich 135; 528 NW2d 170 (1995), and *Whitney v Day*, 100 Mich App 707, 710, 712; 300 NW2d 380 (1980) (a nurse anesthetist, possessing greater qualifications than an ordinary nurse, is subject to a local, not national, standard of care).

Next, although not raised or argued by plaintiffs in the lower court or on appeal, the majority sua sponte asserts that defendant "waived" objections to the substance of plaintiffs' experts' testimony by failing to file a motion to strike plaintiffs' experts within a reasonable time after learning the experts' identities and basic qualifications. Again, I disagree.

The sole authority relied on by the majority for its waiver argument is the recently released decision *Greathouse v Rhodes*, 242 Mich App 221; 618 NW2d 106 (2000). However, *Greathouse* is readily distinguishable and does not support the majority's position. The issues in *Greathouse* were whether the defendant's expert was a qualified specialist as defined by MCL 600.2169(1); MSA 27A.2169(1) and, if not, whether the plaintiff had relinquished her objec-

tions to his qualifications by failing to make a timely motion to strike the defendant's expert.

As explained by the *Greathouse* Court:

> [C]hallenges to an opponent's expert under subsection 2169(1)(a) such as the one plaintiff advanced in this case generally do not require extensive discovery. A simple interrogatory question, a request for the expert's curriculum vitae, or other basic research would reveal whether the expert satisfies the licensure, specialty, or certification requirements set forth in subsection 2169(1)(a). . . .
>
> . . . It is patently unfair for a party to wait until the brink of trial to challenge the basic qualifications of the opponent's expert, thereby catching the opponent surprised, unprepared, and at an extreme disadvantage. [*Greathouse, supra* at 235-236.]

Unlike *Greathouse,* in the present case there was no issue whether plaintiffs' experts were qualified specialists in their field of expertise. Rather, the objections in the instant case pertained to the substance of the experts' testimony (introducing evidence of a national, as opposed to local, duty of care) not to their basic qualifications. Under our rules of evidence (MRE 103[a][1]), defendant's objection to the testimony was timely and therefore not forfeited. *In re Weiss,* 224 Mich App 37, 39; 568 NW2d 336 (1997); *Westphal v American Honda Motor Co, Inc,* 186 Mich App 68, 70; 463 NW2d 127 (1990).

Next, without any citation of authority, the majority holds "[w]hile defendant may not have had the burden of proof to demonstrate the standard of care, defendant's failure to present proofs in a separate record that the standard of care is governed by a local standard precludes any conclusion that the trial court's ruling resulted in prejudicial error." *Ante* at 82. Because the applicable legal duty is an issue of law,

*Moning v Alfono,* 400 Mich 425, 436-437; 254 NW2d
759 (1977); *Papadimas v Mykonos Lounge,* 176 Mich
App 40, 45; 439 NW2d 280 (1989), an evidentiary offer
of proof is not appropriate or required. See, generally,
MRE 103(a)(2). Again, this waiver argument raised by
the majority is not supported by our rules of evidence
or any authority.

In regard to defendant's final arguments concerning
plaintiffs' counsel's closing argument, I agree with
and join the majority's opinion.

Finally, the majority disagrees with the Supreme
Court's order of remand by holding: "Accordingly,
even if we were to conclude that defendant's issues
on appeal provided grounds for relief, we would sua
sponte apply the unclean hands maxim to allow the
trial judgment to stand." *Ante* at 93. The majority's
previous position on the necessity of filing a cross
appeal to urge an alternative ground for affirmance
has been rejected in this case by the Supreme Court:
"[T]he Court [of Appeals] erred in refusing to review
four arguments raised by defendant on the erroneous
ground that defendant was required to file a cross
appeal to raise them. *Middlebrooks v Wayne Co,* 446
Mich 151, 166, n 41; [521 NW2d 774] (1994)." *Cox,*
*supra* at 859-860. Similarly, the majority's resurrected
"unclean hands," jurisdictional, and law of the case
arguments have been dismissed by the Supreme
Court in its order: "In these unique circumstances, it
would be unjust for the Court to refuse to rule on
these issues which defendant has properly and per-
sistently raised." *Id.* at 860. Because the Supreme
Court has ruled that defendant's substantive issues
are properly before us, I find the majority's criticism
of the procedural history of this appeal to be inappro-
priate and unwarranted. For the benefit of the bench
and bar, I attach as an appendix our previous unpub-

lished opinion per curiam and dissent, *Cox v Flint Bd of Hosp Managers*, issued April 6, 1999 (Docket No. 205025), vacated May 16, 2000.

I respectfully dissent. I would reverse and remand for a new and fair trial.

## APPENDIX

## STATE OF MICHIGAN

## COURT OF APPEALS

| | |
|---|---|
| TERESA COX, as Next Friend of BRANDON COX, a minor, TERESA COX AND CARNEY COX, individually. | UNPUBLISHED<br>April 6, 1999 |
|     Plaintiff-Appellees/,<br>    Cross-Appellants, | |
| v | No. 205025<br>Genesee Circuit Court |
| BOARD OF HOSPITAL MANAGERS for the City of Flint d/b/a HURLEY MEDICAL CENTER, a municipal corporation, | LC No. 95-12247NM |
|     Defendant-Appellant/<br>    Cross-Appellee. | |
| And | |
| EDILBERTO MORENO, M.D., | |
|     Defendant. | |

Before: HOOD, PJ, and GRIFFIN and MARKEY, JJ.

PER CURIAM. Judgment was entered in favor of plaintiffs on June 13, 1994 following a jury trial. Defendant moved for judgment notwithstanding the verdict (JNOV), and in the alternative a new trial or remittitur. The trial court granted defendant a new

trial unless plaintiffs were willing to accept remittitur to the amount of $475,000. Plaintiffs appealed and this Court vacated the order granting a new trial. This Court also remanded for reconsideration of the motion for new trial and instructed the trial court to prepare a detailed analysis of economic and non-economic damages if it deemed remittitur appropriate. *Cox v Flint Bd of Hospital Mgrs*, unpublished order of the Court of appeals, entered December 14, 1994 (Docket No. 179366). Subsequently, the trial court entered an order granting defendant JNOV and conditionally granting a new trial if the JNOV was reversed on appeal. In *Cox v. Flint Bd of Hospital Mgrs*, unpublished per curiam opinion of the Court of Appeals, issued November 22, 1996 (Docket No. 184859), this Court reversed the grant of JNOV. In its opinion, the prior panel refused to decide several substantive issues raised by defendant because defendant had failed to file a cross-appeal. After unsuccessfully attempting to convince this Court to hear its issues relating to the June 13, 1994 judgment,[1] defendant had the trial court enter a new order of judgment against it on July 21, 1997. From that order, defendant appeals as of right, raising substantially the same issues as previously briefed for this Court in docket number 184859. Plaintiffs cross-appeal claiming that defendant's appeal should be dismissed because the issues it raises are improperly before this Court. We agree with plaintiffs and dismiss defendant's appeal.

In *Cox, supra* at 3, this Court stated:

---

[1] Defendant filed a motion for rehearing in docket number 194859 and when that was denied, it filed a severely tardy claim of appeal from the June 13, 1994 judgment, which claim of appeal was dismissed in docket number 200943.

Although defendant asserts in its brief on appeal that other issues warranted a new trial, these claims were not raised by way of a cross-appeal. Accordingly, review of these issues is precluded. *Barnell v Taubman Co, Inc,* 203 Mich App 110, 123; 512 NW2d 13 (1993).

Defendant filed a motion for rehearing, specifically arguing that this Court should have heard and decided the other issues because they could have warranted a new trial. This Court denied the motion for rehearing on January 14, 1997. Defendant did not appeal that order to the Supreme Court.

Under the law of the case doctrine, an appellate court ruling on a particular issue binds the appellate court and all lower tribunals with regard to that issue. The law of the case mandates that a court may not decide a legal question differently where the facts remain materially the same. The doctrine applies to questions specifically decided in an earlier decision and to questions necessarily determined to arrive at that decision. The rationale supporting the doctrine is the need for finality of judgment and the want of jurisdiction in an appellate court to modify its own judgments except on rehearing. Two exceptions to the doctrine exist: (1) when the decision would preclude the independent review of constitutional facts and (2) when there has been an intervening change of law. [*Webb v Smith (After Second Remand)*, 224 Mich App 203, 209-210; 568 NW2d 378 (1997) (citations omitted).]

In *Driver v Hanley (After Remand)*, 226 Mich App 558, 565; 575 NW2d 31 (1997), this Court recently stated the doctrine as follows:

The law of the case doctrine provides that a ruling by an appellate court with regard to a particular issue binds the appellate court and all lower tribunals with respect to that issue. Thus, a question of law decided by an appellate court will not be decided differently on remand *or in a subse-*

*quent appeal in the same case. This rule applies without
regard to the correctness of the prior determination. . . .*
(emphasis added).

In docket number 184859, plaintiffs raised the issue
of law as to whether defendant's substantive issues
relating to the underlying judgment should be
reviewed absent a cross-appeal. This Court decided
that they should not. *Cox, supra.* This Court rein-
forced its ruling that a cross-appeal was necessary
when it denied defendant's motion for rehearing. In
the cross-appeal currently before this Court, we are
once again asked to decide whether defendant's sub-
stantive issues relating to the underlying judgment
should be reviewed when a cross-appeal was never
filed at the time the initial appeal was briefed, argued
and decided. We are bound by the prior panel's deci-
sion that it was necessary for defendant's to file a
cross-appeal, after plaintiffs filed their initial appeal,
if it wanted its substantive issues heard. We therefore
need not address defendant's arguments that a cross-
appeal was not necessary.

We note, however, that there is a conflict regarding
whether a cross-appeal to the original appeal was
necessary. We believe the prior panel's decision that a
cross-appeal was necessary was correct. See *Vander-
Wall v Midkiff*, 186 Mich App 191, 201-203; 463 NW2d
219 (1990) and *Shipman v Fontaine Truck Equip-
ment Co*, 184 Mich App 706, 714; 459 NW2d 30 (1990).
In *Shipman*, this Court reversed a grant of JNOV in
favor of defendant Fontaine. In its brief on appeal,
Fontaine argued, in the alternative, that if this Court
reversed the JNOV, a new trial should be granted
because plaintiffs failed to supplement discovery
responses and because of allegedly improper jury

instructions given during trial. The trial court had rejected these alternative arguments. This Court ruled that because the issues were not cross-appealed, they were not properly before this Court and would not be addressed. *Id.* See also 3 Martin, Dean & Webster, Michigan Court Rules Practice, p 230:

> To preserve any issue on appeal, not raised in an appellant's brief, an appellee must file a cross appeal.
>
> While the authors have been unable to find any Michigan case which thoroughly discusses an appellee's obligation to file a cross appeal in Michigan if the appellee merely wishes to defend, and not to enlarge, the judgment below, the purpose for the Michigan rule does appear in St. John v Nichols, 331 Mich. 148, 49 N.W.2d 113 (1951). The court there states that this rule serves the desirable purpose of placing both parties in the same position as relates to the necessity of apprising each other and the court of their claims of error and limiting the scope of their appeals thereto. In other words, it prevents an appellee from raising an issue in his or her brief to which the appellant has no opportunity to respond by way of reply brief.[2]

There are, however, cases that have ruled to the contrary, finding that cross-appeals are not necessary where a party is urging alternate grounds to support a trial court's decision. See *ABATE v Public Service Comm*, 192 Mich App 19; 280 NW2d 585 (1991) and *Akyan v Auto Club Ins Ass'n (On Rehearing)*, 208 Mich App 271, 274-275 (1994). *In ABATE*, this Court was asked to decide issues relating to a Public Ser-

---

[2] We agree that from a practitioner's standpoint, requiring a cross-appeal is more equitable. An appellant is limited to a ten page reply brief. MCR 7.212(G). If appellee is allowed to file a fifty page response brief detailing numerous grounds for either sustaining the favorable trial court result or granting a new trial, the appellant is prejudiced in filing a meaningful response to those arguments. Motions for leave to file briefs in excess of page limitations are disfavored by this Court. See MCR 7.212(B).

vice Commission (PSC) decision in favor of Michigan Consolidated Gas Co. On appeal, the gas company raised an issue, which had been specifically rejected by the PSC, as an alternative means of upholding the PSC decision. This Court stated that "an appellee who has taken no cross appeal may still urge in support of the judgment in its favor reasons that were rejected in the lower court." *Id.* at 24. In *Akyan*, defendant also urged an alternate ground for sustaining a dismissal that was granted in its favor. The alternate ground was raised and apparently rejected by the trial court in granting defendant a dismissal on other grounds. This Court indicated that although it would normally be precluded from hearing the issue because a cross-appeal was not filed, it would hear the issue because the argument was an alternate ground for sustaining the judgment. *Akyan, supra* at 274.

While we acknowledge that there is a conflict in our case law over whether a cross-appeal is necessary, we conclude that the better rule of law is to require a cross-appeal under the circumstances. *Shipman, supra.* Where defendant decided not to file a cross-appeal, it did so at its own peril. Resolution of that conflict, however, is not necessary for a resolution of this case. We reiterate that even if a cross-appeal was not required because an alternate ground was being urged, defendant's claim in this case would nevertheless need to be dismissed. Correctly or incorrectly, this Court already ruled that defendant was required to file a cross-appeal. That decision was never appealed to our Supreme Court and it is the law of the case. *Driver, supra.* After this Court denied defendant's motion for rehearing in docket number 184859 and defendant decided not to appeal

to our Supreme Court, it directly filed a claim of appeal (Docket No. 200943) from the June 13, 1994 judgment entered in plaintiffs favor and attempted to raise the issues that this Court had already precluded from review. This claim of appeal was grossly tardy. It was filed on January 30, 1997, which was well in excess of the twenty-one day time limit set forth in MCR 7.204(A)(1)(a). By January 30, 1997, defendant had also lost the right to have a delayed application for leave to appeal granted on the June 13, 1994 judgment. See MCR 7.205(F)(3), which provides that if an application for leave to appeal is filed more than twelve months *after entry of the order or judgment on the merits, leave to appeal may not be granted* (emphasis added). This Court dismissed defendant's claim of appeal in docket number 200943 without prejudice on June 11, 1997 "for failure to pursue the case in conformity with the rules. MCR 7.216(A)(10)."

Defendant thereafter had the trial court enter a new order of judgment on July 21, 1997. The new order simply that the JNOV order was reversed pursuant to this Court's opinion in *Cox, supra.* It then also mirrored the June 13, 1994 judgment. Defendant appeals this new judgment as of right and again raises the issues that this Court previously precluded from review. The July 21, 1997 order was unnecessary. The prior ruling of this Court in *Cox, supra* intended that the June 13, 1994 judgment be enforced after the JNOV order was reversed. Notably, the prior panel did not remand the case for further proceedings or entry of a *new* judgment.

Moreover, even if the new order was necessary because the prior opinion failed to specify that the June 13, 1994 judgment should be reinstated, there is

no authority to support that defendant was entitled to take an appeal as of right from this new judgment, which simply restated or reinstated the prior judgment. If we allowed defendant to appeal as of right from this new order, it would be tantamount to allowing defendant to escape the prior ruling of this Court that defendant was required to file a cross-appeal to plaintiffs' previous appeal. It would also ignore all applicable time limits within the court rules and would flaunt the policies of this Court, which advocate judicial economy and the closure of cases. It would encourage other parties to seek new orders after appeal in order to restart the time limits for filing an appeal and would allow an appeal as of right from an underlying judgment each time a JNOV or new trial order is simply reversed by this Court. For those reasons, we find that defendant did not have an appeal as of right from the July 21, 1997 judgment, which was entered solely for the purpose of providing defendant with an opportunity to appeal the substantive issues from the June 13, 1994 judgment.

Finally, we note that on August 1, 1997, plaintiffs filed a motion to dismiss this appeal for want of jurisdiction. That motion was denied by a panel of this Court without comment on January 28, 1998. The denial of the motion to dismiss does not preclude this Court from deciding the jurisdictional issues, which were first raised in the motion to dismiss and are now raised in plaintiffs' cross-appeal. The denial of a motion to dismiss is a preliminary disposition of the issue. In *DAIIE v McMillan*, 97 Mich. App 687; 296 NW2d 147 (1980), rev'd on other grounds 417 Mich 946, for example, plaintiffs filed a claim of appeal. Defendants filed two motions to "dismiss", which

were treated by this Court as motions to affirm the lower court. The motions were dismissed without comment. On appeal, defendants attempted to raise the issues, which were found to be without merit when this Court denied the motions to dismiss. This Court ruled that because no cross-appeal was filed, the issues would not be reconsidered. *Id.* at 695-696.

Michigan Court Rules Practice, Rule 7.211, states, when discussing motions to dismiss and affirm:

> Dismissal may be sought on the grounds that the appeal is not within the Court's jurisdiction, that the appeal was not filed or pursued in conformity with the court rules, or that the appeal is moot. MCR 7.211(2). *To fully preserve an issue raised in a motion to dismiss, however, an appellee may also be required to file a cross appeal.* See *DAIIE v McMillan* . . . and Author's Comment, MCR 7.204, pint 1. (emphasis added).

The Author's Comment to MCR.704, indicates that both a motion to dismiss raising jurisdictional issues and a cross-appeal raising the same issues may be filed:

> Counsel should note, however, that only the filing of a cross appeal fully preserves the issue for appellate review. An appellee's attempt to raise an issue on appeal found to be without merit in *preliminary orders disposing of a motion to dismiss will not be considered further if a cross appeal is not also filed.* (emphasis added).

It necessarily follows that the ruling of the motion docket panel which denied the motion to dismiss without comment does not constitute "law of the case" with regard to jurisdictional issues and does not preclude our consideration of those issues in plaintiffs' cross-appeal.

Defendant's appeal is dismissed, and the July 21, 1997 judgment is vacated. The trial court should enforce the June 13, 1994 judgment.

/s/ Harold Hood
/s/ Jane E. Markey

GRIFFIN, J. (*dissenting*). The strained, overly technical arguments accepted by the majority to bar defendant from raising its meritorious issues on appeal are unpersuasive particularly when viewed in the overall context of this case. In light of the ambiguities contained in the previous opinion of *Cox v Bd of Hosp Managers for the City of Flint*, unpublished opinion per curiam (after remand) of the Court of Appeals issued 11/22/96 (Docket No. 184859) (herein *Cox* opinion), and our conflicting decisions on the cross appeal rule, I conclude that we should address the merits of defendant's appeal. See, generally, MCR 1.105.[1] After doing so, I would reverse and remand for a new trial.

I

First, I disagree with the majority's selective application of the "law of the case" doctrine. Although plaintiffs' jurisdictional and issue preclusion arguments were previously raised and rejected by our Court when we denied plaintiffs' motion to dismiss

---

[1] MCR 1.105 provides:

These rules [Michigan Court of 1985] are to be construed to secure the just, speedy, and economical determination of every action and to avoid the consequences of error that does not affect the substantial rights of the parties.

(MCR 7.211(C)(2)(a)), the majority has chosen not to follow our previous ruling. Instead, the majority has revisited these issues and has reversed our decision on plaintiffs' motion to dismiss.

In contrast, the majority has chosen to vigorously apply the law of the case doctrine in regard to the *Cox* opinion.[2] The law of the case doctrine, however, is inapplicable to *Cox*. First, as noted by the majority, the doctrine only applies to "an appellate court *ruling* on a particular issue." Majority opinion, p 2, emphasis added. By the majority's own characterization, the prior *Cox* panel made no rulings on the defendant's issues but rather "[i]n its opinion, the prior panel *refused to decide* several substantive issues raised by defendant because defendant had failed to file a cross appeal." Majority opinion, p 2, emphasis added. Refusing to decide issues is not the equivalent of ruling on the merits. Rather, it is more akin to our Court or the Supreme Court denying leave to appeal for failure to persuade as to the need for immediate appellate review. Such actions are not precedentially binding. For instance, in *Jackson Printing Co, Inc v Mitan*, 169 Mich App 334, 338-339; 425 NW2d 791 (1988), this Court, when confronted with a similar situation, stated:

> Initially, we must address plaintiff's claim that defendant's appeal is barred by the law of the case. Plaintiff claims that this Court's July 2, 1986, denial of defendant's

---

[2] The majority in its attempt to mechanically apply the doctrine fails to recognize its discretionary nature. "Justice Holmes recognized almost a century ago, unlike the later doctrines, the law of the case doctrine 'merely expresses the practice of the courts generally to refuse to reopen what has been decided, not a limit to their power.'" *Locricchio v Evening News Ass'n*, 438 Mich 84, 109; 476 NW2d 112 (1991).

application for leave to appeal "for lack of merit in the grounds presented" bars the reraising of this issue.

"The term 'law of the case,' as generally used, designates the principle that if an appellate court has passed on a legal question and remanded the cause to the court below for further proceedings, the legal questions thus determined by the appellate court will not be differently determined on a subsequent appeal in the same case where the facts remain the same. [*Allen v Michigan Bell Telephone Co*, 61 Mich App 62, 65; 232 NW2d 302, lv den 395 Mich 793 (1975).]"

The only issue raised in defendant's previous application was whether she should have had an appeal as of right; no substantive challenge to the award of exemplary damages was presented. Because this Court did not previously decide the issue of the propriety of the jury instructions on the merits, the doctrine of the law of the case does not preclude defendant's appeal.

In *Gallagher v Detroit-Macomb Hospital Assn*, 171 Mich App 761, 764; 431 NW2d 90 (1988), a medical malpractice action,

Prior to trial, the court granted defendant's motion to exclude from trial the hospital's internal rules and regulations concerning its nursing personnel. Plaintiff moved for immediate consideration and applied for emergency leave to appeal both in this Court and our Supreme Court. Both courts granted the motion for immediate consideration but denied leave. The issue was raised again at trial and the court sustained the defendant's objection.

Plaintiff's first issue is whether the trial court erred in refusing to admit the internal rules and regulations. Defendant contends that plaintiff is precluded by the doctrine of the law of the case from raising this issue on appeal because of the earlier denials of leave. *That doctrine applies only to questions which were actually determined by the appellate court's prior decision and which were necessary to the prior decision. Jackson Printing Co, Inc v Mitan*, 169 Mich App 334, 338-339; 425 NW2d 791 (1988). The previous determinations in this case did not rule upon

the merits and therefore, having no precedential value, do not preclude our present review. *Jackson, supra.* [Emphasis added.]

The majority concludes that defendant's issues on appeal have been relinquished by operation of the following statement made in the *Cox* opinion:

Although defendant asserts in its brief on appeal that other issues warranted a new trial, these claims were not raised by way of a cross appeal. Accordingly, review of these issues is precluded. *Barnell v Taubman Co, Inc,* 203 Mich App 110, 123; 512 NW2d 13 (1993).

The sole authority cited in *Cox* is *Barnell v Taubman Co, Inc,* 203 Mich App 110, 123; 512 NW2d 13 (1993), which does not support the majority's decision. On the contrary, in *Barnell,* the issue defendant failed to raise on cross appeal and the court did not rule on appeal, was whether plaintiff may recover damages, although plaintiff allegedly failed to mitigate his damages. However, in *Barnell,* this issue was not relinquished, but rather the case was remanded for further proceedings at which time the defendant presumably could reargue the mitigation issue. Accordingly, the result reached by the majority in the present case is not supported by the authority relied on by the prior *Cox* panel.

Next and most importantly, the majority misconstrues our rule on cross appeals. At the present time, despite the resolution of conflicts rule, MCR 7.215(H), the Court of Appeals is hopelessly in conflict on the construction of our rule on cross appeals. MCR 7.207. In view of this abyss, I urge the Supreme Court to grant leave on this case in order to resolve the conflict. Contrary to the majority, I favor construing our

cross appeal rule consistently with federal practice and with the practice of nearly all other states. As has been stated by commentators Martin, Dean & Webster, Michigan Court Rules Practice, Rule 7.207, author's comment, p 229:

> In the federal courts and in most state courts an appellee may object to the rulings of the trial court (and to preliminary actions taken by the appellate court, such as accepting a claim of appeal) without cross appealing so long as the appellee does so to preserve, and not to enlarge, rights obtained in the trial court. Thus, in effect, an appellee may claim that the trial court erred on one issue in order to uphold its ruling on another. For example, the appellee may argue an alternative ground for the lower court's ruling, even though the lower court rejected that ground.

Although Martin, Dean & Webster originally opined that Michigan's cross appeal practice was inconsistent with federal practice and with that of nearly all other states, in their supplemental comment, they now conclude:

> There is now, however, some question as to whether or not an appellee must cross appeal before he or she is permitted to argue an alternative ground for affirmance not raised in appellant's brief. [*Id.* at 27.]

An extraordinary plea to resolve the conflict is made by these commentators:

> At present the authors can only state that caselaw on both sides of the issue exists, and that both decisions noted above were released in 1994. For the benefit of all, they suggest that the Court of Appeals examine the issue in depth the next time it is raised. [*Id.* at 27.]

The language and framework of our cross appeal rule runs contrary to the construction adopted by the

majority. In particular, MCR 7.207(B) provides that when a cross appeal is filed its form is governed by MCR 7.204(D). MCR 7.204(D) provides that when a claim of appeal is filed, it must specify that "plaintiff or defendant claims an appeal from the judgment or order entered." It is axiomatic that a prevailing party may not appeal from an order or judgment of complete relief in its favor. *Ford Motor Co v Jackson (On Rehearing)*, 399 Mich 213, 225-226; 249 NW2d 29 (1976) (opinion by Coleman, J.). See also, *Kocenda v Archdiocese of Detroit*, 204 Mich App 659, 666; 516 NW2d 132 (1994); *Gray v Pann*, 203 Mich App 461, 463-464; 513 NW2d 154 (1994). Accordingly, the case law holding that cross appeals must be made as to "issues" as opposed to claims appears to be inconsistent with our rules.

In addition, MCR 7.207(D) provides that if the appellant abandons the initial appeal or the court dismisses it, the cross appeal may be prosecuted to its conclusion. If cross appeals are issue based rather than claim based, subsection (D) makes no sense because a cross appeal would obviously be moot when the principal appeal has been abandoned or dismissed. See, generally, *Derbeck v Ward*, 178 Mich App 38 (1989), for the claim/theory distinction.

Although the majority acknowledges a conflict in the Court of Appeals regarding the construction of the cross appeal rule, it fails to cite our most recent decision on this issue, *In re Herbach Estate*, 230 Mich App 276, 284; 583 NW2d 541 (1998), which holds in pertinent part:

> Although a cross appeal is necessary to obtain a decision more favorable than that rendered by the lower tribunal, a cross appeal is not necessary to urge an alternative ground

for affirmance, even if the alternative ground was considered and rejected by the lower court. *Middlebrooks v Wayne Co*, 446 Mich 151, 166, n 41; 521 NW2d 774 (1994); *Ass'n of Businesses Advocating Tariff Equity v Public Service Comm*, 192 Mich App 19, 24; 480 NW2d 585 (1991). But see *Barnell v Taubman Co, Inc*, 203 Mich App 110, 123; 512 NW2d 13 (1993).

In addition, and most strikingly, the majority fails to acknowledge or follow Supreme Court precedent on this issue which is contrary to their position. In *Middlebrooks v Wayne Co*, 446 Mich 151, 166, n 41; 521 NW2d 774 (1994), our Supreme Court summarized the rule of cross appeals as follows:

> Wayne County has not claimed that this Court should decline to reach the Michigan constitutional issue because Middlebrooks did not cross appeal. A cross appeal was not necessary to urge an "alternative ground for affirmance."
>
> It is well established that an appellee who has taken no cross appeal may still urge in support of the judgment in its favor reasons that were rejected by a lower court. *Burns v Rodman*, 342 Mich 410, 414; 70 NW2d 793 (1955), and authorities cited therein. It is true that an appellee that has not sought to cross appeal cannot obtain a decision more favorable than was rendered by the lower · tribunal. *McCardel v Smolen*, 404 Mich 89, 94-95; 273 NW2d 3 (1978). Michigan Consolidated Gas Company does not seek to enlarge the scope of the relief granted by the PSC, but merely argues an alternate ground for affirmance that was rejected by the PSC. [*ABATE v Public Service Comm*, 192 Mich App 19, 24; 480 NW2d 585 (1991).]
>
> Plaintiff appellant claims that defendant appellee, having taken no cross appeal, may not urge in support of the judgment in his favor, reasons rejected by the trial court. However, in favor of the contrary proposition, see [ten citations of decisions of this Court omitted]. [*Burns v Rodman*, 342 Mich 410, 414; 70 NW2d 793 (1955).]

Plaintiffs urge that because the trial judge, after holding plaintiffs were not proper parties plaintiff, nonetheless considered the case on the merits and defendants have taken no cross appeal, they may not now, on appeal, question plaintiffs' capacity to sue. [Three citations of decisions of this Court omitted.] These cases hold, directly to the contrary, that an appellee need not take a cross appeal in order to urge, in support of relief afforded him below, reasons other than those adopted by or those rejected by the lower court. [*Menendez v Detroit*, 337 Mich 476, 483; 60 NW2d 319 (1953).]

For arguable authority supporting a conflict on this issue within the Supreme Court, see *Pulver v Dundee Cement Co*, 445 Mich 68, 70, n 2; 515 NW2d 728 (1994),[3] and *Peters v Aetna Life Ins Co*, 282 Mich App 426; 276 NW 504 (1937).

The majority asserts in footnote two of its opinion that if an appellee were allowed to argue alternative grounds for affirmance, that the appellant would be prejudiced. This argument was previously rejected by the Supreme Court:

Plaintiff appellant claims that defendant appellee, having taken no cross appeal, may not urge in support of the judgment in his favor, reasons rejected by the trial court. However, in favor of the contrary proposition, see *Grant v*

---

[3] Since the Constitution of 1963 and establishment of the Court of Appeals, the jurisdiction of the Supreme Court has been largely discretionary. It has become the practice of the Supreme Court not to grant plenary review, but narrow review usually "limited to the issues raised in the application for leave to appeal." MCR 7.302(D)(4)(a). In *Pulver, supra*, the Supreme Court refused to consider an alternative basis for affirmance raised by the plaintiff in response to the defendant's appeal. Although the *Pulver* footnote states that the issue "is not properly preserved because plaintiff failed to cross appeal on this issue," a more accurate explanation is that by operation of the Supreme Court's order limiting the grant of appeal to the issues raised in defendant's application, the issue argued by plaintiff was simply not before the Court

*Merchants' and Manufacturers' Bank of Detroit*, 35 Mich 515; *Robertson v Gibb*, 38 Mich 165; *Lambert v Griffith*, 44 Mich 65; *Bundy v Youmans*, 44 Mich 376; *Regents of the University of Michigan v Rose*, 45 Mich 284. Also, *Township of Pontiac v Featherstone*, 319 Mich 382; *Morris v Ford Motor Company*, 320 Mich 372; *Fass v City of Highland Park*, 321 Mich 156; *Bostrom v Jennings*, 326 Mich 146; and *Menendez v City of Detroit*, 337 Mich 476.

While it might simplify the briefs filed in this Court if the appellee had served on the appellant, before the appellant filed his brief, a statement of what reasons rejected by the trial court, if any, the appellee would rely upon to sustain his case in this Court, still we feel constrained to consider appellee's claims in this Court as to matters which were presented to the trial court. [*Burns v Rodman*, 342 Mich 410, 414; 70 NW2d 793 (1955).]

In addition, it should be noted that the ten-page limitation for appellant's reply brief (MCR 7.212(G)) may be waived by this Court in the exercise of its discretion. MCR 7.216(A)(7).

In conclusion, I would follow *In re Herbach Estate, supra*, and the Supreme Court precedent as noted in *Middlebrooks, supra*, and hold that "[a]lthough a cross appeal is necessary to obtain a decision more favorable than that rendered by the lower tribunal, a cross appeal is not necessary to urge an alternative ground for affirmance, even if the alternative ground was considered and rejected by the lower court." *In re Herbach Estate, supra* at 284.

II

As an alternative basis for affirmance, the majority has also reconsidered the issue of jurisdiction. Again, plaintiffs' argument that defendant has no appeal as of right was previously raised and decided against

plaintiffs when we denied plaintiffs' motion to dismiss. In denying plaintiffs' motion to dismiss on its merits, we were fully informed by the clerk of our Court of her actions as well as the reliance on her directions by defendant. See affidavit of Marc S. Berlin.

The majority, however, has chosen not to afford deference to the clerk of our Court and has disregarded her directions to the parties as to how to proceed. In particular, the majority states "[t]he prior ruling of this Court in *Cox*, *supra*, intended that the June 13, 1994, judgment be enforced after the JNOV order was reversed." Majority op, p 6. The clerk of our Court, however, took the opposite position and advised defense counsel accordingly. The Clerk of the Court of Appeals determined that the *Cox* opinion which simply reversed without direction was not self-executing. Accordingly, Assistant Clerk Linda Sherer advised defense counsel that an order of the trial court reinstating the 1994 judgment was necessary for the filing of an appeal as of right of the judgment. Pursuant to our clerk's direction, the lower court thereafter issued a July 21, 1997, order which reinstated the 1994 judgment. Defendant timely appealed and its appeal was docketed as an appeal of right. Despite this history, the majority concludes "[t]he July 21, 1997, order was unnecessary." I respectfully disagree and will not ignore the history of the case and the involvement of the clerk of our Court.

Additionally, the majority fails to understand that after the trial court entered its order granting judgment notwithstanding the verdict (JNOV), the earlier judgment in favor of plaintiffs was vacated and therefore could not be appealed as of right. After the vaca-

tion of the judgment by the order granting JNOV, the only "final judgment or final order of the circuit court," MCR 7.203(A)(1), which was appealable as of right was the JNOV order. Simply put, there was no right (or requirement) to appeal (or cross appeal) the 1994 judgment during the period that it was vacated by the grant of new trial, remittitur, and JNOV. As such, defendant was not required or permitted to appeal as of right the 1994 judgment until after this Court's decision in *Cox* and after the trial court's order reinstating the judgment.

### III

In the trial court and on appeal, defendant raises two issues of error that require reversal. First, over defendant's objection, the trial court gave the jury an instruction regarding professional negligence/ malpractice which substantially departed from SJI2d 30.01. Specifically, the trial court deleted the crucial phrase, "of ordinary learning, judgment, or skill" which limits the duty owed by the defendant. The nonstandard jury instruction given by the trial judge in effect imposed strict liability for any wrong committed by defendant irrespective of the standard of care. The jury was instructed:

> When I use the words professional negligence or malpractice with respect to defendant's conduct, I mean the failure to do something which a hospital neo-intensive care unit would do or the doing of something which a hospital neo-intensive care unit would not do under the same or similar circumstances you find to exist in this case.

Conspicuously omitted from the instruction was the limitation "of ordinary learning, judgment, or skill"

which is the standard of care applicable to defendant's conduct. The error was critical to a fundamental material issue in the case. See, generally, *Kirby v Larson*, 400 Mich 585, 607; 256 NW2d 400 (1977).

Second, the court erred in allowing the jury to find that a "neonatal intensive care *unit*" could commit professional negligence/malpractice as opposed to individuals within defendant's neonatal intensive care unit. See *Danner v Holy Cross Hosp*, 189 Mich App 397, 398-399; 474 NW2d 124 (1991): "Despite plaintiff's attempt to characterize his claim as one of corporate negligence, his claim is, in fact, one for medical malpractice. * * * The only way a hospital can render treatment is through its nurses and physicians." The error was further compounded by the trial court's refusal to apply a local, as opposed to a national, standard of care to the "unit." See *Whitney v Day*, 100 Mich App 707, 710, 712; 300 NW2d 300 (1980).

The above errors were sufficiently prejudicial that to allow the judgment to stand would be "inconsistent with substantial justice." *Johnson v Corbet*, 423 Mich 304, 326; 377 NW2d 713 (1985). In view of the above errors requiring reversal, I would find it unnecessary to address the additional issues raised by defendant.

I respectfully dissent. I would reverse and remand for a new trial.