## DYSARZ v. MACK.

EXCHANGE OF PROPERTY—CANCELLATION OF INSTRUMENTS—DE-
FAULT.

> Where plaintiff and defendants exchanged equities under an
> agreement whereby plaintiff was to pay a second mortgage on
> the property conveyed by her, but failed to do so, and also
> failed to make payments on the contract or to pay the taxes
> on the property conveyed to her, defendants were entitled to
> have cancellation of the exchange agreement.

Appeal from Livingston; Collins (Joseph H.), J.
Submitted October 10, 1928. (Docket No. 141, Cal-
endar No. 34,020.) Decided December 4, 1928. Re-
hearing denied March 29, 1929.

Bill by Marie A. Dysarz against Anthony Mack
and others to enjoin summary proceedings, and for
specific performance of a land contract. Defendants
Mack filed a cross-bill for the cancellation of land
contracts, and the possession of a farm. From a
decree for defendants, plaintiff appeals. Affirmed.

*Harry M. Stone* (*F. E. Rankin,* of counsel), for
plaintiff.

*Edward Daskam,* for defendants.

POTTER, J. Plaintiff was the owner of a house and
lot in Dearborn, Wayne county, Michigan. There
was a first mortgage thereon upon which there was
an unpaid balance of $2,868.04 and a second mort-
gage in litigation as to the amount due, subsequently
determined by suit to be $1,038.89 and costs of suit,
amounting in all to $1,188. Defendants Mack were

the owners of the contract of purchase of a farm in Livingston county, Michigan, the holder of the fee being defendant Emma J. Funsch. The parties were brought together by a real estate broker and it was mutually agreed to exchange equities in the respective properties. When the parties came together to make the formal agreement of exchange, the existence of the second mortgage on the Dearborn property was first made known to defendant Mack. He insisted this mortgage be paid or satisfied before he would proceed. As a result of further negotiations a separate contract was drawn and signed by plaintiff and defendants Mack, and annexed to the contract of sale of the Dearborn property as a separate covenant thereto, reciting the pendency of litigation over the second mortgage, and providing plaintiff should pay this mortgage, and the amount due on the Mack land contract should, in event of its payment, be reduced $1,000, leaving a balance due defendants Mack on the contract of $2,150. The defendants Mack desired to occupy the Dearborn property, and insisted on having a provision in the contract stipulating the time which plaintiff was to have to take care of the second mortgage on the Dearborn property. October 25, 1926, the contracts providing for the exchange of equities were made. Plaintiff agreed to sell defendants Mack the Dearborn property in consideration of $4,500 paid down and the payment of the additional sum of $4,041 with interest—

"*all of which purchase money and interest shall be paid in instalments of not less than forty-three ($43) dollars each, payable November 25, 1926, next and not less than the last named sum thereafter;* said payments to be applied (first upon interest and the balance on principal): Provided, *the entire pur-*

*chase money and interest shall be fully paid within*
*sixty (60) days from the date hereof anything here-*
*in to the contrary notwithstanding.''*

This contract provided the defendants Mack were
to convey to plaintiff, on the carrying out of the con-
tract, by warranty deed, a marketable title of the
farm.  The contract contained the usual clauses, that
vendee should pay the taxes and insurance, and pro-
vided:

"When the sum owing. hereon is reduced to the
amount owing upon such contract or mortgage or
owing to any mortgage executed under either of the
powers in this contract contained, a conveyance shall
be made in the form above provided with a covenant
by the grantee to assume and pay the same.''

It contained a clause providing for forfeiture of
the premises and all amounts paid on the contract
and all improvements if the purchaser failed to per-
form the contract or any part thereof.  The contract
executed by the Macks to plaintiff, recited the pay-
ment of $5,000 by the purchaser to the vendor, stip-
ulating the balance to be paid as $3,150; provided
for its payment with interest in instalments of not
less than $100 each, payable December 1, 1926, and
a like sum on each December 1st thereafter, and—

"provided *the entire purchase money and interest*
*thereon shall be paid within sixty days from date*
*hereof, anything hereinbefore to the contrary not-*
*withstanding.*

'It is understood that there is a certain agree-
ment about a certain credit of certain amounts, to
be credited on this contract and also about the cer-
tain credits to be given on contract to the vendor
herein on property they are purchasing from
vendee.''

There was, in this contract, covenants for the payment by the vendee of the insurance, taxes, and assessment, and providing:

"4. If default is made in the payment of any tax, assessment or insurance premium, or in the procuring and delivery of any insurance policy, the vendor may pay such tax, assessment or premium, or procure such insurance, and all sums paid therefor shall be a further lien on the premises payable by the purchaser to the vendor forthwith with interest at the rate of seven per cent. per annum."

The contract also provided:

* * * "When the amount owing upon this contract shall be reduced to the amount owing by the vendor upon any mortgage or mortgages or contract on the premises, a conveyance shall be made in the manner above provided with a covenant by the grantee to assume and pay the same. * * * If purchaser shall fail to perform this contract or any part thereof the vendor immediately after such default shall have the right to declare the same void and retain whatever may have been paid hereon and all improvements that may have been made upon the premises and consider and treat the purchaser as his tenant holding over without permission, and may take immediate possession of the premises and the purchaser and each and every other occupant remove and put out."

There were several minor matters involved. Defendants Mack were paid $100 prior to the execution of the written contracts. They were to be paid $400 more. This sum of $500 represented the agreed difference in the value of the equities of the respective parties. It is claimed a commission of $159 was paid for the benefit of defendants Mack by plaintiff. Plaintiff did not procure a settlement of the second mortgage on the Dearborn property until after Oc-

tober 15, 1927, when the decree was signed, filed, and entered in the suit in chancery relating thereto, and it had not therefore been settled when this suit was commenced. Plaintiff failed to pay the taxes on the farm, and Mrs. Funsch began foreclosure of the land contract for nonpayment of taxes, and defendants Mack were compelled, to save their equity therein, to pay $160.24 taxes and costs of litigation.

Defendants Mack claimed plaintiff was in default in not carrying out the agreement to take care of the second mortgage on the Dearborn property within 60 days, and in not paying the taxes on the farm, which, upon payment by defendants Mack, became payable forthwith by plaintiff with interest, and, under the forfeiture clause in the contract, defendants Mack gave plaintiff notice of forfeiture and instituted summary proceedings before the defendant Munsell, a circuit court commissioner of Livingston county, to recover possession of the farm, whereupon plaintiff filed the bill in this case in the circuit court for Livingston county, in chancery, to restrain defendants from proceeding further therein and to specifically perform the contract. Defendants Mack filed an answer in the nature of a cross-bill asking for dismissal of plaintiff's bill, a cancellation of the contracts, and for possession of the farm. They admit in their cross-bill the receipt of the payment of $100 and offer to return it if right and equitable so to do. There was a decree for defendants on the cross-bill which provided for the return by defendants to plaintiff of $259, and plaintiff appeals.

Other questions are involved besides those stated above, which would not change the decree arrived at by the trial court which is

Affirmed, with costs.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, McDONALD, and SHARPE, JJ., concurred.