KOCENDA v ARCHDIOCESE OF DETROIT

Docket No. 150075. Submitted March 1, 1994, at Detroit. Decided
    April 19, 1994, at 9:40 A.M. Leave to appeal sought.

Diane Kocenda and Rosemary Szymofelnik brought an action in
    the Wayne Circuit Court against the Archdiocese of Detroit and
    others, alleging wrongful discharge, promissory estoppel, and
    other claims following their dismissal from employment at St.
    Francis Cabrini High School. The plaintiffs had been dis-
    charged before the expiration of the last of a series of employ-
    ment contracts that had each provided for eleven months of
    employment. On the defendants' motion, the court, Edward M.
    Thomas, J., limited the damages the plaintiffs could recover to
    the salaries they would have earned had they been employed
    until the end of their contracts. The defendants tendered those
    amounts to the plaintiffs and moved for the dismissal of the
    plaintiffs' claims. The court granted the motion. The plaintiffs
    appealed.

    The Court of Appeals held:

    The trial court did not err in ruling that the plaintiffs were
    not entitled to damages for the loss of future income and that
    they were not entitled to renewal of their contracts. The
    plaintiffs' employment clearly had been terminable at the will
    of the employer or the employee and had not provided for
    employment that was terminable for just cause only, given that
    the employment contracts did not provide for tenure, specified
    that employment was terminable by either party upon thirty
    days' notice, and that terminated employees were entitled to
    thirty days' pay following notice of termination.

    Affirmed.

MASTER AND SERVANT — EMPLOYMENT CONTRACTS — BREACH —
    DAMAGES.

    For breach of an employment contract providing for employment
        of a definite duration, a wrongfully discharged employee is
        generally entitled to damages consisting of the agreed-upon

REFERENCES
Am Jur 2d, Damages §§ 109, 111.
See ALR Index under Damages; Labor and Employment.

compensation for the unexpired term of employment, less what the employee could earn by making diligent efforts to obtain similar employment.

*Dib & Fagan, P.C.* (by *Barry S. Fagan* and *Keitha Cowen*), for the plaintiffs.

*Bodman, Longley & Dahling* (by *James J. Walsh* and *Karen L. Piper*), for the defendants.

Before: REILLY, P.J., and GRIFFIN and C. L. BOSMAN,* JJ.

PER CURIAM. Plaintiffs appeal as of right from a circuit court order limiting damages for their wrongful discharge claims against defendants. Defendants cross appeal the denial of their motion for summary disposition of the claims. We affirm.

Plaintiff Rosemary Szymofelnik, a member of the Sisters of the Holy Family of Nazareth until 1989, was employed by defendant St. Francis Cabrini High School in 1972 under a contract with the parish for her services. In 1980, Szymofelnik was given the position of principal. Throughout her engagement at the school, Szymofelnik was employed under a series of eleven-month contracts. Szymofelnik was discharged by defendant Father Gary Bueche, pastor of defendant St. Francis Cabrini Parish and, allegedly, an agent of the defendant Archdiocese of Detroit, on March 7, 1989, before the end of the term of her then current contract.

In 1982, plaintiff Diane Kocenda was employed as a guidance counselor at St. Francis Cabrini High School for an eleven-month term under a written contract. Kocenda and St. Francis Cabrini entered into successive eleven-month contracts until the last employment contract of July 1988.

* Circuit judge, sitting on the Court of Appeals by assignment.

Kocenda was also discharged from employment on March 7, 1989, by Father Bueche.

Plaintiffs filed a circuit court action on May 19, 1989, alleging wrongful discharge and promissory estoppel with respect to Kocenda (count I); breach of third-party beneficiary contract with respect to Szymofelnik (count II); wrongful discharge and promissory estoppel with respect to Szymofelnik (count III); defamation of Szymofelnik by Father Bueche (count IV); invasion of privacy (false light) against defendant Carl Weiss (count V); invasion of privacy (false light), against Father Bueche (count VI); violation of the Employee Right to Know Act, MCL 423.501 *et seq.*; MSA 17.62(1) *et seq.* (count VII); and tortious interference with a contractual and business relationship against Weiss (count VIII).

Defendants filed a motion for summary disposition pursuant to MCR 2.116(C)(10), arguing that plaintiffs' claims were barred by the First Amendment, that plaintiffs were at-will employees under the terms of their contracts, and that the remaining claims failed as a matter of law. The trial court granted the motion with respect to counts VII and VIII, but denied it with respect to the other counts.

On May 15, 1991, defendants filed a motion to limit the damages plaintiffs could recover on the claims of wrongful discharge and promissory estoppel under the eleven-month employment contracts. The motion was granted. At the hearing on plaintiffs' motion for clarification/rehearing, the trial court explained that it granted defendants' motion because future damages could not be determined with a reasonable degree of certainty, the contract was for a definite period of time and was not automatically renewable, and it was "clear that it was an at-will situation." Plaintiffs' motion for a

rehearing was denied. An order was entered limiting the plaintiffs' damages under counts I and III to their respective salaries through June 30, 1989, the end of their term of employment under the employment contracts. Subsequently, the trial court indicated that the same reasoning applied to count II.

On November 8, 1991, without admitting liability, defendants tendered to plaintiffs the maximum allowable damages as ruled by the trial court. On December 20, 1991, defendants filed a motion to dismiss plaintiffs' claims of wrongful discharge, promissory estoppel, and breach of contract, arguing that there was no longer any litigable controversy concerning those claims because plaintiffs could not accomplish more if they went to trial. On January 10, 1992, the trial court heard arguments and granted defendants' motion by praecipe order.

On February 24, 1992, the trial court entered a stipulation and order whereby the parties agreed to dismiss counts IV, V, and VI with prejudice and without costs, to dismiss Carl Weiss as a defendant, and to waive mediation sanctions. The parties further agreed to the following:

> In light of the Court's decision to grant Summary Disposition as to Counts I, II and III of Plaintiffs' Amended Complaint, Plaintiffs are permitted to accept the salaries due each Plaintiff through the end of the term of their contracts without in any way waiving their right to appeal any and all of the underlying orders and the Order Granting Summary Disposition as to Remaining Counts which shall be deemed final as of the date [of] entry of this order.

Also on that date, in a formal order, the trial court dismissed counts I, II, and III and, given that

the remaining counts were dismissed by stipulation or order, ruled that the entire case was dismissed and that all previously entered orders were deemed to be final.

Plaintiffs argue two theories to support their claim that the trial court erred in refusing to allow consequential damages with respect to their contract claims. First, plaintiffs claim that their inability to obtain employment and the resulting loss of future income was a direct and foreseeable consequence of the wrongful termination of their contracts midyear. Second, plaintiffs claim that the trial court improperly revisited the issues whether the contracts provided for termination only for "just cause" and whether plaintiffs were entitled to automatic renewal of their contracts absent just cause. Having reviewed the record, we are convinced that the trial court did not err.

Both of the plaintiffs' contracts contained the following language, except that the word "teacher" was inserted in Kocenda's contract in place of the word "principal."

> 1. Unless terminated as hereinafter provided, this AGREEMENT and PRINCIPAL's employment with SCHOOL shall terminate without further obligation on the part either of PRINCIPAL or of SCHOOL at the end of the SCHOOL YEAR, a[n] 11 month period commencing August 1, 1988 and ending June 30, 1989. PRINCIPAL understands, acknowledges and agrees, that he/she has no right to have this AGREEMENT extended or renewed by SCHOOL or to have SCHOOL offer employment to him/her for any other school year that SCHOOL is under no obligation whatsoever to extend or to renew this AGREEMENT or to offer employment to him/her for any other school year, and that SCHOOL may elect not to extend or renew this AGREEMENT or not to offer employment to him/her for any other school year. SCHOOL understands, acknowledges and agrees that

PRINCIPAL is under no obligation and may elect not to extend or renew this AGREEMENT or not to accept employment, if offered by SCHOOL, for any other school year.

\*   \*   \*

6. This AGREEMENT may be terminated during the SCHOOL YEAR either by PRINCIPAL or by SCHOOL upon thirty (30) days written notice subject to the following: if SCHOOL terminates this AGREEMENT without notice or with notice of less than thirty (30) days, PRINCIPAL shall be paid for the thirty (30) days immediately following notice of termination, as if he/she had actually worked the full thirty (30) days following notice, even if relieved of duties before thirty (30) days after notice of termination; if PRINCIPAL terminates this agreement with less than thirty (30) days written notice, PRINCIPAL shall receive compensation for days actually worked but shall forfeit any accrued but unpaid fringe benefits; if PRINCIPAL gives thirty (30) days written notice of termination, PRINCIPAL shall receive compensation for days actually worked plus any accrued fringe benefits.

7. This AGREEMENT may be terminated during the SCHOOL YEAR by SCHOOL immediately, without notice, at any time in the event of any violation of any term of this AGREEMENT by PRINCIPAL, or if SCHOOL otherwise determines that PRINCIPAL's services no longer are necessary or satisfactory, and PRINCIPAL shall be entitled only to such compensation as was earned but unpaid up to and including PRINCIPAL's last day of work . . . .

Paragraph 10 of the Supplement to Teacher Contract signed by both plaintiffs provided:

10. The School is under the obligation to retain the teacher only for the time stated in the Contract. The School has no duty or obligation to automatically renew a Teacher's contract for another year. It is also agreed and understood that there is no "Tenure" in the Cabrini School System.

We agree with the trial court that plaintiffs were not entitled to future damages or to renewal of their contracts. The normal rule is that a wrongfully discharged employee is entitled to the total amount of the agreed-upon salary for the unexpired term of his employment, less what the employee could earn by making diligent efforts to obtain similar employment. *Isagholian v Carnegie Institute of Detroit, Inc,* 51 Mich App 220; ·214 NW2d 864 (1974); 5 Corbin, Contracts, § 1095, p 514; 11 Williston on Contracts (3d ed), § 1358, p 302. Beyond this, the employee is not permitted recovery for injury to his reputation. The primary reasons underlying the rule are that (1) the computation of damages for injury to reputation is unduly speculative, and (2) such damage cannot reasonably be presumed to have been within the contemplation of the parties when they entered into the contract. *Lindsey v Univ of Arizona,* 157 Ariz App 48; 754 P2d 1152 (1987). See also *Myrtle Springs Reverted Independent School Dist v Hogan,* 705 SW2d 707 (Tex Civ App, 1985), cert den 480 US 906 (1987); *Daley v Town of West Brookfield,* 19 Mass App 1019; 476 NE2d 980 (1985); *Winship v Brewer School Committee,* 390 A2d 1089 (Me, 1978); *Billmyre v Sacred Heart Hosp of the Sisters of Charity, Inc,* 273 Md 638; 331 A2d 313 (1975).

In view of the specific language that there was no tenure, that the contracts were terminable by either party upon thirty days' notice, and that plaintiffs were entitled to thirty days of pay following notice of termination, plaintiffs could not reasonably expect that they would be entitled to compensation for any future wage loss even if they were terminated without just cause. Unlike *Munro v Elk Rapids Schools (On Rehearing),* 385 Mich 618; 189 NW2d 224 (1971), and *Anderson v West-*

*wood Community School Dist,* 49 Mich App 406; 212 NW2d 232 (1973), relied upon by plaintiffs, the St. Francis Cabrini school system did not provide tenure and the parties were not subject to the teacher tenure act, MCL 38.71 *et seq.*; MSA 15.1971 *et seq.*

Moreover, the contract language supports the trial court's statement that the plaintiffs' employment was "at will." Although the general policy provisions might suggest that the plaintiffs were "just cause" employees, the unambiguous terms of the contracts allow either the employer or the employee to terminate the employment relationship after giving thirty days' notice. The mutual right to terminate the employment following such notice is incompatible with a "just cause" employment relationship. *Patillo v Equitable Life Assurance Society of the United States,* 199 Mich App 450; 502 NW2d 696 (1993); *Jontig v Bay Metropolitan Transportation Authority,* 178 Mich App 499; 444 NW2d 178 (1989).

We decline to address the issues raised by defendants on cross appeal, because defendants did not condition their stipulation and consent to the court's final orders upon the right to appeal the court's earlier refusal to grant their motion for summary disposition. Additionally, because the final orders granting summary disposition are in defendant's favor, defendants are not "aggrieved" and are not entitled to an appeal as of right. *Reddam v Consumer Mortgage Corp,* 182 Mich App 754; 452 NW2d 908 (1990).

Affirmed.