*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SIMONE MAURO, SALVATORE DIMERCURIO,
and SERGIO GESUALE,

        Plaintiffs/Counterdefendants-
        Appellants,

v

ANTHONY MARROCCO, ANTHONY FANELLI,
and JODE INVESTMENTS, LLC,

        Defendants/Counterplaintiffs-
        Appellees,

and

CLUB GOLF PROPERTIES, LLC and CLUB
GOLF, INC.,

        Defendants-Appellees.

UNPUBLISHED
November 19, 2025
9:48 AM

No. 369572
Macomb Circuit Court
LC No. 17-003401-CB

Before: REDFORD, P.J., and FEENEY and BAZZI, JJ.

PER CURIAM.

This case involves disputes between various investors in a golf club property, a project which started in 2004 and fell into turmoil when the golf club property was foreclosed upon in 2009. Since then, the golf club property has been the subject of multiple lawsuits between the parties in 2011 and 2017. Likewise, these disputes have been the subject of multiple previous Court of Appeals decisions.

In this appeal, plaintiffs/counterdefendants, Simone Mauro, Salvatore DiMercurio, and Sergio Gesuale, appeal as of right the final order dismissing this case, but challenge three of the trial court's earlier orders. First, plaintiffs challenge the trial court's January 30, 2018 order granting partial summary disposition in favor of defendants/counterplaintiffs under MCR 2.116(C)(7) (claims barred by res judicata and compulsory joinder) and (C)(8) (failure to state a claim) of Counts IV through VII of plaintiffs' complaint. Second, plaintiffs challenge the trial

-1-

court's June 6, 2018 opinion and order denying plaintiffs' motion for summary disposition of defendants' counterclaims under MCR 2.116(C)(7) (claims barred by res judicata, compulsory joinder, and statute of limitations) and granting defendants' motion for summary disposition of plaintiffs' conversion claim under MCR 2.116(I)(2) (opposing party entitled to summary disposition). Third, plaintiffs challenge the trial court's January 16, 2020 opinion and order denying plaintiffs' motion for summary disposition under MCR 2.116(C)(7) (claims barred by statute of limitations) of defendants' counterclaims.

Years after the trial court entered these opinions and orders, this appeal is now before this Court because the parties entered a stipulated order of dismissal which closed the case. The final stipulated order appealed from, issued January 12, 2024 stated as follows:

> The parties, by and through their respective counsel, having agreed and stipulated that *the remaining claims of plaintiffs and the counter-claims of defendants are to be dismissed with prejudice* and without costs to either party, and the Court being otherwise advised in the premises;
>
> IT IS HEREBY ORDERED:
>
> The claims of plaintiffs and the counter-claims of defendants remaining in this case are hereby DISMISSED WITH PREJUDICE and without costs to any of the parties. *This does not affect any claims which were already dismissed in this case*, which may be appealed upon entry of this final order. [Emphasis added.]

On appeal, plaintiffs argue the trial court erred by dismissing several of their claims under the doctrine of res judicata and compulsory joinder. Plaintiffs also argue the trial court erred by refusing to dismiss defendants' counterclaims on the basis of res judicata, compulsory joinder, and the statute of limitations.

For the reasons set forth below, we conclude we do not have jurisdiction to consider plaintiffs' claims of error in relation to defendants' counterclaims. We also conclude the trial court did not err by dismissing plaintiffs' claims. Therefore, we affirm.

## I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

The underlying dispute between these parties was the subject of litigation before the Macomb Circuit Court ("the 2011 Case"). That case has a long and complicated procedural history, and has been before this Court, in some form, multiple times.

## A. THE 2011 CASE

In a prior opinion, this Court set forth the pertinent facts of the underlying dispute:

> In September 2004, Marrocco, Fanelli, Mauro, DiMercurio, Sergio Gesuale, and Ralph Patti formed two limited liability companies: Burning Tree Properties, LLC and Burning Tree Investors, LLC (collectively the Burning Tree entities). Marrocco and Fanelli did not participate in the formation of the Burning Tree entities in their individual capacities; instead, they caused their own limited liability

-2-

company—Jode Investments—to form the new entities along with the other members. Eventually Jode Investments, Mauro, DiMercurio, and Gesuale each owned 25% of the Burning Tree entities. The members formed the Burning Tree entities to purchase and operate the Burning Tree Golf and Country Club; specifically, they organized Burning Tree Properties to purchase the golf course's real property and organized Burning Tree Investors to operate the golf course and country club.

The Burning Tree entities financed the purchase of the golf course with a $3,360,000 loan from Fifth Third Bank. To secure the loan, Burning Tree Properties granted Fifth Third a mortgage on its real property and Burning Tree Investors guaranteed the loan and provided Fifth Third with a security agreement covering all of its personal property, including its liquor license. Marrocco, Fanelli and the individual members of the Burning Tree entities also each personally guaranteed the loan. The note obligated the Burning Tree entities to make a balloon payment in January 2009, which they did not make.

Fifth Third foreclosed against Burning Tree's real property by advertisement and purchased the property at a foreclosure sale held in October 2009. Fifth Third bid $1,500,000 for the property and recorded its deed in November of that same year. The remaining debt after the foreclosure was approximately $2 million.

In November 2009, Fifth Third sued the Burning Tree entities, DiMercurio, Fanelli, Gesuale, Marrocco, Mauro, and Patti. Fifth Third alleged that the Burning Tree Investors, DiMercurio, Fanelli, Gesuale, Marrocco, Mauro, and Patti breached their guaranties. It also alleged the right to take possession of Burning Tree Investors' personal property in partial satisfaction of the remaining debt. Fifth Third asked the circuit court to appoint a receiver to preserve the personal property and any profits from the operation of the golf course.

In April 2010, Marrocco and Fanelli entered into a settlement agreement with Fifth Third. Marrocco and Fanelli agreed to pay Fifth Third $2.1 million and to release all claims against Fifth Third. In exchange, Fifth Third agreed to dismiss its civil claims against Marrocco and Fanelli "with prejudice" and without impairing Fifth Third's right to proceed against the other guarantors. Fifth Third also agreed to quit claim its interest in "the Burning Tree Property" or issue a certificate of redemption to an entity to be named by Marrocco and Fanelli. Finally, Fifth Third agreed to terminate its financing statements under the Uniform Commercial Code (UCC) against Burning Tree Investors' personal property and discharge any interest in Burning Tree Investors' liquor license. Marrocco and Fanelli also represented that they intended to create an entity to acquire Burning Tree Investors' remaining assets.

Also in April 2010, members holding a 70% interest in Burning Tree Properties (Marrocco, on behalf of Jode Investments, Mauro, and DiMercurio) caused Burning Tree Properties to assign all of its "right, title, and interest" in the

real property, including its redemption rights, to Club Properties.[2] Under the terms of the agreement, the manager of Burning Tree Properties had to execute a quit claim deed to Club Properties.

---

[2] Club Golf and Club Properties were formed in April 2010.

---

Club Properties paid $2,100,000 to Fifth Third as part of the settlement between Fifth Third, Fanelli, and Marrocco in May 2010. Fifth Third executed a 'redemption certificate' acknowledging that Club Properties had redeemed the real property in that same month. The redemption was not recorded until February 2011. Fifth Third also stipulated to the dismissal of its claims against the Burning Tree entities, Marrocco, Fanelli, and Patti.

In July 2010, Fifth Third settled with Mauro and DiMercurio. Under the settlement agreement, Mauro and DiMercurio agreed to each execute a deficiency note for $70,000 to cover their personal guaranties. In exchange, Fifth Third agreed that the settlement would resolve its claims against Mauro and DiMercurio. The circuit court dismissed Fifth Third's claims against Mauro and DiMercurio later that same month. [*Jode Investments LLC v Burning Tree Props, LLC*, unpublished per curiam opinion of the Court of Appeals, issued April 17, 2014 (Docket No. 310957), p 2-3 (*Jode Investments I*).]

In the 2011 case, defendants (then-plaintiffs) Jode Investments and the Club Golf entities sued the Burning Tree entities, Mauro, DiMercurio, and Gesuale to dissolve the Burning Tree entities and to declare that Club Golf Properties owned the real property formerly owned by Burning Tree Properties and the personal property formerly owned by Burning Tree Investors.[1] On April 27, 2011, plaintiffs (then-defendants) Mauro, DiMercurio, Gesuale, and the Burning Tree entities filed counterclaims against Jode Investments and the Club Golf entities and filed a third-party complaint against Marrocco and Fanelli, alleging claims for an accounting, conversion, claim and delivery, breach of contract, and breach of fiduciary duty. In return, Marrocco and Fanelli raised claims of unjust enrichment, tortious interference with business, breach of contract, breach of fiduciary duty, conversion, and fraudulent misrepresentation against Mauro, DiMercurio, and Gesuale.

The trial court granted Marrocco and Fanelli summary disposition of all of plaintiffs' counterclaims and third-party claims after concluding that Marrocco and Fanelli lawfully obtained the personal property of Burning Tree Investors. Consequently, the trial court dismissed plaintiffs' 2011 claims alleging conversion, claim and delivery, breach of contract, and breach of fiduciary duty, but left plaintiffs' claim for an accounting intact. Thereafter, the trial court granted defendants' motion for specific performance and ordered Mauro to execute a quitclaim deed transferring the real property of Burning Tree Properties to Club Golf Properties. The trial court also granted defendants' motion to dissolve the Burning Tree entities. In a final order, the trial

---

[1] The parties in this case have held varying designations in relation to the golf course litigation. For clarity, this opinion refers to the parties in their current roles as plaintiffs and defendants.

court dismissed with prejudice all remaining claims against Jode Investments, the Club Golf entities, Marrocco and Fanelli.

After the trial court closed the case, the Burning Tree entities, Mauro, and DiMercurio filed an appeal as of right. In that appeal, a panel of this Court held that the trial court did not err by concluding that Burning Tree Properties executed a valid assignment of its right to redeem the real property from Fifth Third Bank and, therefore, Club Golf Properties obtained full title to the real property by that assignment. *Id*. at 11. However, the panel held that the trial court erred when it granted defendants' motion for summary disposition of plaintiffs' counterclaims and by subsequently ordering Burning Tree Investors to execute documents to transfer its personal property to Club Golf. The panel stated as follows:

> The trial court erred when it dismissed the claims by the Burning Tree entities, Mauro, and DiMercurio on the grounds that Fifth Third transferred Burning Tree Investors' personal property and liquor license to Marrocco, Fanelli, or Club Golf. Given the unambiguous and undisputed evidence, those assets remained Burning Tree Investors' property. The trial court also erred when it ordered Burning Tree Investors to transfer those assets to a third party without compensation. [*Id*.]

Although the panel agreed with plaintiffs with respect to their claims of error, it declined to grant the relief requested by plaintiffs, which was the reversal of the trial court, the restoration of the Burning Tree entities, and the return of the personal property to Burning Tree Investors. *Id*. at 14. Instead, the panel exercised its authority under MCR 7.216(A)(7) to reverse the trial court's order compelling Burning Tree Investors to transfer its personal property to Club Golf entities only to the extent the trial court ordered the transfer without compensation. *Id*.

On remand, the trial court held an evidentiary hearing on the valuation of the personal property. Then the trial court issued an opinion and order determining the value of the personal property and addressing other arguments raised by the parties. This opinion and order, in addition to several other opinions and orders issued by the trial court on remand, were the subject of a second appeal in this Court. See *Jode Investments, LLC v Burning Tree Props, LLC*, unpublished per curiam opinion of the Court of Appeals, issued February 27, 2018 (Docket Nos. 335299 and 336726) (*Jode Investments II*). The *Jode Investments II* panel remanded the case back to the trial court with instructions to consider a loan receivable in its valuation of the personal property and ordered the trial court to rescind the award of statutory interest. On that remand, the trial court closed the case in its March 9, 2018 opinion and order.

## B. THE 2017 CASE

On September 13, 2017, plaintiffs filed a complaint against defendants arising from the same facts and transactions at issue in the 2011 case. Plaintiffs asserted that Marrocco and Fanelli misrepresented to plaintiffs that plaintiffs would be members in the entity formed to redeem the golf course property from Fifth Third Bank, and this misrepresentation defrauded them of their ownership interest in the Burning Tree entities. Plaintiffs further alleged that defendants wrongfully took personal property belonging to Burning Tree Investors. Plaintiffs alleged seven claims, which included Count I: conversion for taking Burning Tree Investors' personal property

without compensation; Count II: claim and delivery demanding all book and records which belonged to the Burning Tree entities; Count III: breach of contract for the breach of the operating agreements for the Burning Tree entities; Count IV: fraudulent misrepresentation for inducing plaintiffs not to redeem the golf course property following the foreclosure; Count V: negligent misrepresentation; Count VI: silent fraud; and Count VII: breach of contract. In addition to answering plaintiffs' complaint and raising affirmative defenses, defendants asserted seven counterclaims against plaintiffs.[2]

In December 2017, defendants moved for summary disposition of plaintiffs' complaint under MCR 2.116(C)(4), (C)(6), (C)(7), (C)(8) and (C)(10). Defendants argued, in relevant part, that the doctrines of compulsory joinder, res judicata, and collateral estoppel barred plaintiffs from litigating the claims raised in the 2017 case asserting that they were entitled to the assets previously owned by the Burning Tree entities. According to defendants, Counts I and II sought the same relief plaintiffs sought in the 2011 case. Additionally, defendants argued the remaining claims should be dismissed because they sought to undo the *Jode Investments I* panel's decision affirming the Club Golf entities' right to ownership of the Burning Tree entities' assets.

Plaintiffs responded that their claims were not barred by the doctrines of compulsory joinder, res judicata, or collateral estoppel. According to plaintiffs, Counts I through III were raised in the 2011 case, but dismissed without prejudice, which is not a decision on the merits for purposes of compulsory joinder, res judicata, and collateral estoppel. Additionally, plaintiffs argued Counts IV through VII asserting various fraud claims and breach of contract were not raised and could not have been raised in the 2011 case. At a hearing on defendants' motion for summary disposition, the trial court declined to dismiss Counts I through III, but granted partial summary disposition in favor of defendants and dismissed Counts IV through VII of plaintiffs' complaint. The trial court explained:

> Yeah, okay. Yeah, I believe that these, these matters could have been, should have been and were actually by implication raised, although it wasn't called a fraud claim at the time. It's just a reworking of allegations that the Court of

---

[2] Defendants alleged the seven following counterclaims: (1) declaratory judgment that Club Golf Properties owns the real estate pursuant to the redemption agreement; (2) unjust enrichment on the basis that plaintiffs received significant reductions in debt when defendants settled with and paid Fifth Third Bank; (3) breach of contract (specific performance) for the payment of capital contributions plaintiffs owed under the Burning Tree entities' operating agreements; (4) tortious interference on the basis of plaintiffs hosting events at the golf course at a reduced rate, which resulted in lost profits for the Burning Tree LLCs; (5) breach of fiduciary duty for failure to make contributions, for failure to take action to avoid foreclosure, and for self-dealing; (6) conversion (statutory and common law) against Mauro and DiMercurio for secretly receiving payments and other benefits for hosting events without remitting funds to Burning Tree entities; and (7) fraudulent misrepresentation against Mauro for misrepresenting his personal finances during the negotiation of the settlement with Fifth Third Bank.

Appeals had already determined were closed. And so counts one through three survive, counts four through seven are dismissed.

On January 30, 2018, the trial court entered an order dismissing Counts IV through VII of plaintiffs' complaint for the reasons stated on the record.

In April 2018, plaintiffs moved for summary disposition of defendants' counterlaims under MCR 2.116(C)(7). Plaintiffs argued defendants' counterclaims were barred by the doctrines of res judicata and collateral estoppel. Plaintiffs separately moved for summary disposition in their favor on Count I (conversion) of their complaint under MCR 2.116(C)(10), arguing there was no genuine issue of material fact that defendants wrongly retained the personal property of Burning Tree Investors as stated by this Court in the *Jode Investments* decisions. In response, defendants argued plaintiffs were not entitled to summary disposition of defendants' counterclaims because none of their counterclaims were dismissed on the merits or dismissed with prejudice in the 2011 case. Defendants argued they were entitled to summary disposition of plaintiffs' conversion claim under MCR 2.116(I)(2), in relevant part, because the conversion claim was already decided on the merits in the 2011 case and plaintiffs merely seek a different remedy.

On June 6, 2018, the trial court entered an opinion and order denying plaintiffs' motion for summary disposition of defendants' counterclaims and plaintiffs' conversion claim. However, the trial court granted summary disposition in favor of defendants under MCR 2.116(I)(2) of plaintiffs' conversion claim, explaining that plaintiffs raised a conversion claim in the 2011 case, and the *Jode Investments I* panel merged all theories of recovery into one remedy under its authority in MCR 7.216(A)(7).

In December 2019, plaintiffs moved for summary disposition of defendants' counterclaims under MCR 2.116(C)(5), (C)(7), (C)(8), and (C)(10), arguing that defendants lacked standing to assert the claims and that the claims were barred by the statute of limitations. Defendants opposed this motion. On January 16, 2020, the trial court entered an opinion and order denying plaintiffs' motion. Thereafter, the trial court proceedings continued on for several years on the remaining claims. On January 12, 2024, the trial court entered the stipulated order set forth earlier dismissing all remaining claims and counterclaims with prejudice.

This appeal followed.

## II. JURISDICTION

At the outset, it is necessary for this Court to address a jurisdictional matter. Although the parties have not challenged this Court's jurisdiction, "[a] court is, at all times, required to question sua sponte its own jurisdiction." *Tyrrell v Univ of Mich*, 335 Mich App 254, 260; 966 NW2d 219 (2020), overruled in part on other grounds by *Christie v Wayne State Univ*, 511 Mich 39; 993 NW2d 203 (2023).[3] We conclude that we lack jurisdiction to address plaintiffs' claims of error in relation to defendants' counterclaims.

---

[3] The parties were given the opportunity to address this jurisdictional issue during oral argument.

Generally, "[a] party claiming an appeal of right from a final order is free to raise issues on appeal related to prior orders." *Green v Ziegelman*, 282 Mich App 292, 301 n 6; 767 NW2d 660 (2009) (quotation marks and citation omitted). However, to claim an appeal as of right from a final order, the party claiming an appeal must be an "aggrieved party." MCR 7.203(A)(1). "To be aggrieved, one must have some interest of a pecuniary nature in the outcome of the case, and not a mere possibility arising from some unknown and future contingency." *Federated Ins Co v Oakland Co Rd Comm*, 475 Mich 286, 291; 715 NW2d 846 (2006) (quotation marks and citation omitted). It is also a general rule "that parties who consent to a final order cannot appeal its merits." *Jaber v P & P Hospitality, LLC*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 363572); slip op at 4. But, "a consent judgment may be appealable when a reservation of rights is included." *Id*. See also *Kocenda v Archdiocese of Detroit*, 204 Mich App 659, 666; 516 NW2d 132 (1994) ("We decline to address the issues raised by defendants on cross-appeal, because defendants did not condition their stipulation and consent to the court's final orders upon the right to appeal the court's earlier refusal to grant their motion for summary disposition. Additionally, because the final orders granting summary disposition are in defendant's favor, defendants are not 'aggrieved' and are not entitled to an appeal as of right.").

"A stipulation is an agreement, admission, or concession made by the parties in a legal action with regard to a matter related to the case." *VHS Huron Valley Sinai Hosp v Sentinel Ins Co*, 322 Mich App 707, 716; 916 NW2d 218 (2018) (quotation marks and citation omitted). This Court construes a stipulation using the same principles applicable to interpreting a contract. *Id*. When construing a contract, the goal "is to give effect to the intent of the parties, to be determined first and foremost by the plain and unambiguous language of the contract itself." *Kendzierski v Macomb Co*, 503 Mich 296, 311; 931 NW2d 604 (2019) (quotation marks and citation omitted).

The parties entered the stipulated order of dismissal in this case set forth earlier. The stipulation states that the parties agreed to dismiss with prejudice "the remaining claims of plaintiffs and the counter-claims of defendants." The language of the stipulation clearly reflects that all claims and counterclaims still pending in the action were to be dismissed without the ability to take further legal proceedings on the same claims. A reservation in the stipulation states the stipulation "does not affect any claims which were already dismissed in this case" and those claims "may be appealed upon entry of this final order." The wording of this reservation shows the parties' intent to retain the right to appeal only claims that were previously dismissed by the trial court. No reservation of the right to appeal claims other than those previously dismissed by the trial court was made in the stipulated order.

In this case, plaintiffs appeal from three opinions and orders entered by the trial court before the final stipulated order of dismissal. As a result of these opinions and orders, the trial court dismissed Count I and Counts IV through VII of plaintiffs' complaint. However, the trial court declined to dismiss any of defendants' counterclaims. Consequently, after the parties' various motions for summary disposition, Counts II and III of plaintiffs' complaint and all of defendants' counterclaims remained pending in the case. Thereafter, on January 12, 2024, the trial court entered the stipulated order of dismissal which disposed of the remaining cases and closed the case.

Plaintiffs expressly reserved the right to appeal claims already dismissed by the trial court before entry of the stipulated final order. Therefore, plaintiffs' claims of error related to Counts I

and Counts IV through VII of their complaint are properly before this Court. However, plaintiffs did not reserve the right to appeal the claims and counterclaims that were dismissed in the stipulated order, which included all of defendants' counterclaims. After agreeing to dismiss the remaining claims and counterclaims in this case, plaintiffs are not an aggrieved party. See MCR 7.203(A)(1). Additionally, because the final stipulated order dismissing defendants' counterclaims against plaintiffs with prejudice was in plaintiffs' favor, plaintiffs are no longer aggrieved by the trial court's earlier opinions and orders denying summary disposition of those counterclaims. See *Kocenda*, 204 Mich App at 666.[4] We decline to hear plaintiffs' appeal in relation to defendants' counterclaims. See MCL 7.203(A)(1).[5]

The stipulated order of dismissal also rendered plaintiffs' claims of error related to the counterclaims moot. Generally, this Court will not decide moot issues. *Garrett v Washington*, 314 Mich App 436, 449; 886 NW2d 762 (2016). "An issue is moot if an event has occurred that renders it impossible for the court to grant relief." *Gen Motors Corp v Dep't of Treasury*, 290 Mich App 355, 386; 803 NW2d 698 (2010). Likewise, "[a]n issue is also moot when a judgment, if entered, cannot for any reason have a practical legal effect on the existing controversy." *Id*. In this case, plaintiffs seek for this Court to issue an order remanding to the trial court with instructions to dismiss defendants' counterclaims against plaintiffs. The remedy plaintiffs seek already occurred by the stipulated order of dismissal with prejudice. There is no relief this Court can provide plaintiffs regarding defendants' counterclaims. Therefore, plaintiffs' claims of error related to defendants' counterclaims are moot. Because plaintiffs are not an aggrieved party in relation to defendants' counterclaims and these issues are moot, we decline to address plaintiffs' claims of error related to the counterclaims.

## III. PLAINTIFFS' CLAIMS

Plaintiffs argue the trial court erred by determining that their claims were barred by the doctrines of compulsory joinder and res judicata. We disagree.

The trial court granted summary disposition of plaintiffs' claims under MCR 2.116(C)(7) and (C)(8). We review de novo a decision on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). This Court also reviews de novo the

---

[4] We note that this Court's recent decision in *Jaber* does not change the outcome of this issue. In *Jaber*, this Court determined that "an aggrieved party may raise on appeal issues arising from an earlier order relating to one party even if a later, stipulated final order of dismissal as to another party does not contain a reservation of the right to claim an appeal from the earlier order." *Jaber*, ___ Mich App at ___; slip op at 11-12. The Court expressly stated it did "not decide whether an appellant may raise issues arising out of an earlier order if the appellant, while failing to reserve the right to appeal, subsequently enters into a stipulated order of dismissal as to the same party that was the subject of the earlier order." *Id*. at ___; slip op at 2 n 3.

[5] The *Jaber* Court also recognized that this Court retains the ability to "exercise its discretion to treat a claim of appeal as a granted application for leave to appeal for reasons of judicial economy." *Jaber*, ___ Mich App at ___; slip op. at 10. We decline to do so.

application of the legal doctrine of res judicata and the interpretation and application of a court rule. *Garrett*, 314 Mich App at 441-442, 450.

A trial court may grant summary disposition under MCR 2.116(C)(7) when a claim is barred "because of . . . prior judgment . . . or other disposition of the claim before commencement of the action." To determine whether summary disposition is appropriate under MCR 2.116(C)(7), "a court considers all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them." *Garrett*, 314 Mich App at 441 (quotation marks and citation omitted). "A motion for summary disposition under MCR 2.116(C)(8) tests the legal sufficiency of a complaint." *Id*. at 451 (quotation marks and citation omitted). "The motion should be granted if no factual development could possibly justify recovery." *Id*. (quotation marks and citation omitted).

MCR 2.203(A), which governs the joinder of claims, counterclaims, and cross-claims, provides as follows:

> In a pleading that states a claim against an opposing party, the pleader must join every claim that the pleader has against that opposing party *at the time of serving the pleading*, if it arises out of the transaction or occurrence that is the subject matter of the action and does not require for its adjudication the presence of third parties over whom the court cannot acquire jurisdiction. [Emphasis added.]

"In determining whether two claims arise out of the same transaction or occurrence for purposes of MCR 2.203(A), res judicata principles should be applied." *Garrett*, 314 Mich App at 451.

This Court has previously explained:

> The purpose of the doctrine of res judicata is to prevent multiple suits litigating the same cause of action. Under the doctrine of res judicata, a final judgment rendered by a court of competent jurisdiction on the merits is conclusive as to the rights of the parties and their privies, and, as to them, constitutes an absolute bar to a subsequent action involving the same claim, demand or cause of action. The doctrine bars a second, subsequent action when (1) the first action was decided on the merits, (2) the matter contested in the second action was or could have been resolved in the first, and (3) both actions involve the same parties or their privies. Michigan courts apply the doctrine broadly to bar not only claims already litigated, but also every claim arising from the same transaction that the parties, exercising reasonable diligence, could have raised but did not. [*King v Munro*, 329 Mich App 594, 600-601; 944 NW2d 198 (2019) (quotation marks and citations omitted).]

Our Supreme Court has indicated that courts should apply a broad "transactional test" rather than the narrower "same evidence test" to determine if the doctrine of res judicata applies. *Adair v Michigan*, 470 Mich 105, 124-125; 680 NW2d 386 (2004). "[T]he same evidence test is tied to the theories of relief asserted by a plaintiff, the result of which is that two claims may be part of the same transaction, yet be considered separate causes of action because the evidence needed to support the theories on which they are based differs." *Id*. at 124 (quotation marks and

citation omitted). Under the transactional test, "a claim is viewed in factual terms and considered coterminous with the transaction, regardless of the number of substantive theories, or variant forms of relief flowing from those theories, that may be available to the plaintiff . . . ." *Id*. (quotation marks and citation omitted). "Whether a factual grouping constitutes a transaction for purposes of res judicata is to be determined pragmatically, by considering whether the facts are related in time, space, origin or motivation, [and] whether they form a convenient trial unit . . . ." *Id*. at 125 (quotation marks, citation, and emphasis omitted, alteration in original).

We first address the trial court order dismissing Counts IV through VII of plaintiffs' complaint. The trial court did not err in dismissing these claims because plaintiffs failed to abide by the compulsory joinder rule in MCR 2.203(A). The 2011 case involved the same transaction as the 2017 case—the settlement Marrocco and Fanelli entered with Fifth Third Bank to redeem the real property following the foreclosure and the assignment of that right of redemption from Burning Tree Properties to Club Golf Properties. *Jode Investments I*, unpub op at 2-3. The propriety of defendants' redemption of the real property and the assignment of the right of redemption was litigated to a conclusion in the 2011 case. After the trial court entered a final order, plaintiffs filed an appeal in this Court and a panel of this Court concluded that Club Golf Properties obtained full title to the real property after Burning Tree Properties executed an assignment of its right to redeem the real property. *Id*. at 11. The panel also affirmed the trial court's dismissal of plaintiffs' breach-of-fiduciary-duty claim based on Marrocco and Fanelli's dealings with Fifth Third Bank. *Id*. at 12.

In this case, Counts IV through VI of plaintiffs' complaint alleges varieties of fraud and misrepresentation stemming from alleged misconduct committed by defendants Marrocco and Fanelli during the redemption of the real property previously owned by Burning Tree Properties. Under each of these claims, plaintiffs allege defendants caused plaintiffs to sign over to them the redemption rights for the real property by promising that plaintiffs would be members of the new entity formed to redeem the property, but plaintiffs were never made members of that entity. Count VII of plaintiffs' complaint alleges breach of contract for defendants causing Mauro and DiMercurio to sign over the right to redeem the property without paying the consideration of $10,000 listed in the agreement. Plaintiffs seek damages and rescission of the agreement transferring the right to redeem the real property. It is evident that plaintiffs' claims arose from the same transaction as the 2011 case—the redemption of the real property and transfer of the right of redemption of that property. The facts underlying each case are related in time, space, origin, and motivation. *Adair*, 470 Mich at 125. Additionally, the same facts and same assignment of redemption would be examined in both cases, such that the two cases would have formed a convenient trial unit. *Id*.

The doctrine of res judicata bars claims that could have been resolved in the first case, but were not, *King*, 329 Mich App at 601, and MCR 2.203(A) requires a pleader to join every claim it has "at the time of serving the pleading." Plaintiffs contend that at the time they filed their counterclaims and third-party complaint in the 2011 case, they did not have sufficient facts to plead Counts IV through VI premised on Marrocco and Fanelli's alleged fraud and misrepresentations because at the time they did not know when defendants refused to allow plaintiffs to become members of the Club Golf entities. Plaintiffs contend there is a genuine issue of fact when defendants refused to allow plaintiffs to become members. This argument is without merit.

Fraud claims accrue "at the time the wrong upon which the claim is based was done regardless of the time when damage results." MCL 600.5827; *Boyle v Gen Motors Corp*, 468 Mich 226, 231; 661 NW2d 557 (2003). "The wrong is done when the plaintiff is harmed rather than when the defendant acted." *Boyle*, 468 Mich at 231 n 5. Consequently, the relevant inquiry is not when defendants allegedly decided to refuse plaintiffs as members of the Club Golf entities, but when plaintiffs were harmed. Review of the 2011 case shows that plaintiffs knew they had not been made members of the Club Golf entities and could have joined their fraud claims as of the date of the original counterclaims and third-party complaint on April 27, 2011.

In April 2010, Marrocco, on behalf of Jode Investments, Mauro, and DiMercurio assigned the right to redeem the real property to Club Golf Properties by signing a "Consent and Assignment of Redemption Rights." *Jode Investments I*, unpub op at 3. Club Golf Properties redeemed the real property in the same month. *Id*. According to plaintiffs' 2017 complaint, Marrocco and Fanelli induced Mauro and DiMercurio to assign the right of redemption by promising that they would form a new entity with plaintiffs as members to own the real property.

On January 21, 2011, the Club Golf entities and Jode Investments filed the original complaint against Mauro, DiMercurio, Gesuale, and the Burning Tree entities to dissolve the Burning Tree entities and to declare that Club Golf Properties owned the real property formerly owned by Burning Tree Properties and the personal property formerly owned by Burning Tree Investors. *Id*. at 3-4. They also raised claims of unjust enrichment, tortious interference with business, breach of contract/specific performance, breach of fiduciary duty, conversion, and fraudulent misrepresentation against Mauro, DiMercurio, and Gesuale. *Id*. at 3-5. At the time the original complaint was filed against plaintiffs, the Club Golf entities had already been formed and had redeemed the real property without making plaintiffs members. The Club Golf entities were the very entities suing plaintiffs in the 2011 case. Therefore, it stands to reason that at the time the original complaint was filed plaintiffs knew they had not been made members of the Club Golf entities as allegedly promised and had no reasonable expectation to be made members of the Club Golf entities. See *Boyle*, 468 Mich at 231 n 5. Consequently, plaintiffs knew of defendants' alleged failure to make them members of the Club Golf entities when they filed their counterclaims against Jode Investments and the Club Golf entities and third-party complaint against Marrocco and Fanelli on April 27, 2011, and should have joined these claims. MCR 2.203(A).

Plaintiffs also contend that Count VII of their complaint seeking rescission of the Consent and Assignment of Redemption Rights for breach of contract was not barred by compulsory joinder because it could not have been filed as of the date of the counterclaims and third-party complaint. The parties entered the Consent and Assignment of Redemption Rights in April 2010. *Jode Investments I*, unpub op at 3. The agreement states that the transfer of the right of redemption was made in exchange for consideration of $10,000. As previously stated, the validity of the assignment of the real property was at issue in the original complaint filed in the 2011 case. At the time plaintiffs filed their counterclaims and third-party complaint, plaintiffs knew or should have known defendants had not paid the consideration listed in the Consent and Assignment of Redemption Rights and should have joined their claim for breach of contract. See MCR 2.203(A).

Despite this, plaintiffs contend that their breach-of-contract claim could not have been raised until June 4, 2012, when the trial court dissolved the Burning Tree entities and plaintiffs could no longer seek specific performance of the agreement. This argument is also without merit.

As an initial matter, plaintiffs state without elaboration or citation to legal authority that defendants did not breach the Consent and Assignment of Redemption Rights until June 4, 2012 when the trial court dissolved the Burning Tree entities. "[T]his Court has generally held that a cause of action for breach of contract accrues when the breach occurs, i.e., when the promisor fails to perform under the contract." *Blazer Foods, Inc v Restaurant Props, Inc*, 259 Mich App 241, 245-246; 673 NW2d 805 (2003). Nothing in the agreement states that payment of the consideration was conditioned on the dissolution of the Burning Tree entities. Plaintiffs fail to explain how the continued existence of the Burning Tree entities prevented defendants from performing their obligation under the Consent and Assignment of Redemption Rights.

Additionally, the fact that plaintiffs could no longer seek specific performance of the agreement when the Burning Tree entities were dissolved did not prevent them from bringing a claim for rescission at any point before the dissolutions. Specific performance and rescission are both remedies for breach of contract. See *Fisk v Fisk*, 328 Mich 570, 574; 44 NW2d 184 (1950); *Wilmore-Moody v Zakir*, 511 Mich 76, 86; 999 NW2d 1 (2023). Plaintiffs may "simultaneously pursue all available remedies regardless of their legal consistency, if the plaintiff does not obtain a double recovery." *Barclae v Zarb*, 300 Mich App 455, 486; 834 NW2d 100 (2013). Consequently, plaintiffs' assertion that specific performance only became unavailable as a remedy on June 4, 2012, would not have prevented them from raising their claim for rescission of the agreement.

When it dismissed Counts IV through VII of plaintiffs' complaint, the trial court explained that these claims could have been raised in the 2011 case and were raised by implication. The trial court astutely noted that plaintiffs' fraud and breach-of-contract claims were a reworking of the claims plaintiffs asserted in the 2011 case and sought to unravel this Court's determination that the real property was properly transferred to Club Golf Properties. Because plaintiffs were able to, but failed to join Counts IV through VII of their complaint in the 2011 case, the trial court did not err by granting summary disposition of these claims on the basis of compulsory joinder.

Finally, plaintiffs argue the trial court erred by granting summary disposition in favor of defendants on plaintiffs' conversion claim because it is entitled to raise cumulative remedies. We disagree.

In the 2017 case, Count I of plaintiffs' complaint alleged a claim of conversion based on defendants' alleged seizure and misappropriation of personal property previously owned by Burning Tree Investors. The trial court dismissed this claim after explaining it was an "attempt[] to avoid the law of the case in this matter as already established by two opinions of the Court of Appeals."

Plaintiffs do not directly address the trial court's invocation of the law-of-the-case doctrine. However, as previously explained by this Court:

> The law of the case doctrine holds that a ruling by an appellate court on a particular issue binds the appellate court and all lower tribunals with respect to that issue. Thus, a question of law decided by an appellate court will not be decided differently on remand or in a subsequent appeal in the same case. The primary purpose of the doctrine is to maintain consistency and avoid reconsideration of

-13-

matters once decided during the course of a single continuing lawsuit. [*Ashker v Ford Motor Co*, 245 Mich 9, 13; 627 NW2d 1 (2001) (quotation marks and citation omitted).]

This doctrine is inapplicable because the 2011 case and the 2017 case are not one continuous lawsuit. See *id*. Although the trial court's invocation of the law-of-the-case doctrine is erroneous, the trial court also invokes the doctrine of res judicata to explain that the *Jode Investments I* decision litigated the issue of compensation and merged all possible theories of recovery into one remedy pursuant to its discretionary authority under MCR 7.216(A)(7).

Plaintiffs correctly note that conversion is a cumulative remedy, meaning a party may recover on a conversion claim in addition to other remedies available at law. See MCL 600.2919a(2); *Dep't of Agriculture v Appletree Marketing, LLC*, 485 Mich 1, 9-10; 779 NW2d 237 (2010). Plaintiffs argue that because conversion is a cumulative remedy they are entitled to pursue it in addition to the relief granted in *Jode Investments I*. This argument overlooks the unique remedy crafted by the *Jode Investments I* panel which resolved plaintiffs' claim for conversion in the 2011 case.

Plaintiffs asserted conversion as a theory of recovery premised on the seizure and misappropriation of personal property previously owned by Burning Tree Investors in the 2011 case. In *Jode Investments I*, unpub op at 11, the panel concluded that the trial court erred by dismissing the Burning Tree entities, Mauro, and DiMercurio's counterclaims premised on the transfer of the personal property owned by Burning Tree Investors. Rather than reversing the trial court and returning the personal property, the panel exercised its discretionary authority under MCR 7.216(A)(7) to grant different relief to plaintiffs in the form of compensation for the transferred property. *Id*. at 13-14. In explanation of this decision, the panel addressed plaintiffs' bankruptcies; "it is unclear whether and to what extent Mauro's and DiMercurio's individual claims might still be actionable even if we were to reverse the trial court's decision to dismiss those claims." *Id*. at 14. Further, "it is also unclear on this record that Mauro or DiMercurio have the authority to act on the Burning Tree entities' behalf or to cause those entities to continue prosecuting their *claims should we reinstate the entities' claims*." *Id*. (emphasis added). Thereafter, the panel ordered the trial court to amend its orders to provide that the claims previously dismissed were dismissed without prejudice, but clarified the order was applicable "[w]ith the exception of those claims that we have resolved in this appeal." *Id*. at 15.

In *Jode Investments II*, the panel clarified that the *Jode Investments I* panel implicitly found plaintiffs' counterclaims moot and did not reinstate them:

> While this Court noted that the trial court erred when it dismissed defendants' counter-claims based on its determination that Fifth Third transferred BTI's personal property to Marrocco, Fanelli, or Club Golf, this Court importantly, nonetheless, refused to reinstate those claims. *Jode Investments*, unpub op at 11, 13-14. Indeed, the Court acknowledged that it was "unclear" whether Mauro or DiMercurio had "the authority to act on the Burning Tree entities' behalf or to cause those entities to continue prosecuting their claims should we reinstate the entities' claims." *Id*. at 14 (emphasis added). But the Court implicitly found the issue moot because it did not reinstate those claims. Instead, the Court determined that the

typical remedy would be to order the return of the property as a remedy, but the Court also found that this remedy was impractical because much of the property "likely suffered from wear and tear and had to be maintained or replaced" due to the amount of time that had lapsed since the property was initially transferred. *Id*. As a result, the Court exercised its authority under MCR 7.216(A)(7) to "grant further or different relief as the case may require" and ordered that, after an evidentiary hearing related to the valuation of the property, defendants were to be compensated for the value of the property as of "the date of the original order compelling the transfer." *Id*.

In our view, it is important to note that this Court's remedy was not dependent on the reinstatement of any of defendants' counter-claims. [*Jode Investments II*, unpub op at 6-7 (emphasis omitted).]

Relying on the *Jode Investments* decisions, the trial court explained the *Jode Investments I* panel effectively merged all possible theories of recovery into one remedy under MCR 7.216(A)(7). Therefore, the trial court concluded that plaintiffs could not renew its conversion claim because it was already resolved and would amount to "double dipping." The two *Jode Investments* decisions support the conclusion that plaintiffs' counterclaim for conversion was implicitly resolved in the 2011 case and the case involved the same claims and same parties. See *King*, 329 Mich App at 600-601. Therefore, the trial court did not err by granting summary disposition of the conversion claim in defendants' favor.

Affirmed.

/s/ James Robert Redford
/s/ Kathleen A. Feeney
/s/ Mariam S. Bazzi